THE STATE OF OHIO, APPELLEE, *v.* VFW POST 3562, APPELLANT.

[Cite as State *v.* VFW Post 3562 (1988), 37 Ohio St. 3d 310.]

(No. 87-445—Submitted January 19, 1988—Decided July 6, 1988.)

*Max Rothal,* acting director of law, *Gary M. Rosen* and *Kathi L. McNabb,* for appellee.

*John A. Connor II Co., LPA, John A. Connor II* and *Darrell E. Fawley, Jr.,* for appellant.

MOYER, C.J.

## I

In this case we are first presented with the issue of whether the war-rantless administrative search of appellant's club by Department of Liquor Control agents complied with the protections against illegal searches and seizures of Section 14,[2] Article I of the Ohio Constitution and the Fourth[3] and Fourteenth[4] Amendments to the United States Constitution. We hold that it did not and reverse the judgment of the court of appeals.

Appellant VFW Post 3562 challenges the warrantless administrative search conducted in this case as being unconstitutional because the administrative regulatory scheme under which the search was made is not carefully limited as to time, place, and scope. Such a frailty violates Section 14, Article I of the Ohio Constitution and the Fourth Amendment to the United States Constitution. VFW Post 3562 also contends that evidence obtained as a result of the warrantless administrative search may not be used in a criminal prosecution under a statute of general criminality not related to the provisions of R.C. Chapters 4301 and 4303.

The Department of Liquor Control

---

[2] Section 14, Article I of the Ohio Constitution is as follows:

"The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized."

[3] The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and sei-zures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[4] Section 1 of the Fourteenth Amendment to the United States Constitution provides:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

has broad regulatory authority over the manufacture, distribution and sale of intoxicating liquor. R.C. 4301.10 and Ohio Adm. Code Chapter 4301. In particular, the department, under R.C. 4301.10(A)(4), has the power to "[e]nforce Chapters 4301. and 4303. of the Revised Code, and the rules and orders of the board, the director, and the penal laws relating to the manufacture, importation, transportation, distribution, and sale of beer and intoxicating liquors; and the attorney general, any prosecuting attorney, and any prosecuting officer of a municipal corporation or a municipal court, shall at the request of the department prosecute any person charged with the violation of such chapters or of any section of the Revised Code relating to the manufacture, importation, transportation, distribution, and sale of beer and intoxicating liquor." The department also has the authority under R.C. 4301.10(A)(6) to "[i]nspect, upon demand, the books, accounts, records, memorandums, and place of business of any person subject to Chapters 4301. and 4303. of the Revised Code or the laws relating to the manufacture, importation, transportation, distribution, and sale of beer and intoxicating liquors, and the sale of alcohol * * *." R.C. 4301.10(A)(7) provides, in part, that the department shall "[d]elegate to any of its agents or employees any power of investigation which the department possesses and the powers of police officers with respect to the enforcement of any of the penal laws relating to beer and to intoxicating liquor * * *." A warrantless administrative search of a liquor establishment is constitutionally permissible given the long-standing governmental interest in the regulation of the industry. *Colonnade Catering Corp.* v. *United States* (1970), 397 U.S. 72. However, the owner of a liquor establishment does not surrender all his Fourth Amendment protections because of such ownership.

In *New York* v. *Burger* (1987), 482 U.S. ____, 96 L. Ed. 2d 601, 107A S. Ct. 2636, the United States Supreme Court recently held that a warrantless search of an automobile junkyard, conducted pursuant to the New York administrative inspection statute, did not violate the Fourth Amendment. The court first found that the state had a substantial interest in regulating the automobile-junkyard industry as a means of combating automobile theft. Second, the regulatory scheme created by the statute served this interest. Last, the court considered the time, place, and scope elements of the statute to determine whether the warrantless search provisions of the statute were reasonable. The court observed:

"* * * § 415-a5 provides a 'constitutionally adequate substitute for a warrant.' *Donovan* v. *Dewey*, 452 U.S., at 603, 69 L. Ed. 2d 262, 101 S. Ct. 2534. The statute informs the operator of a vehicle dismantling business that inspections will be made on a regular basis. *Id.*, at 605, 69 L. Ed. 2d 262, 101 S. Ct. 2534. Thus, the vehicle dismantler knows that the inspections to which he is subject do not constitute discretionary acts by a government official but are conducted pursuant to statute. See *Marshall* v. *Barlow's, Inc.*, 436 U.S., at 332, 56 L. Ed. 2d 305, 98 S. Ct. 1816 (dissenting opinion). Section 415-a5 also sets forth the scope of the inspection and, accordingly, places the operator on notice as to how to comply with the statute. In addition, it notifies the operator as to who is authorized to conduct an inspection.

"Finally, the 'time, place, and scope' of the inspection is limited, *United States* v. *Biswell*, 406 U.S., at 315, 32 L. Ed. 2d 87, 92 S. Ct. 1593, to

place appropriate restraints upon the discretion of the inspecting officers. See *Donovan* v. *Dewey,* 452 U.S., at 605, 69 L. Ed. 2d 262, 101 S. Ct. 2534. The officers are allowed to conduct an inspection only 'during [the] regular and usual business hours.' § 415-a5. The inspections can be made only of vehicle-dismantling and related industries. And the permissible scope of these searches is narrowly defined: the inspectors may examine the records, as well as 'any vehicles or parts of vehicles which are subject to the record keeping requirements of this section and which are on the premises.' *Ibid.*" *Id.* at ____, 96 L. Ed. 2d at 619-620, 107A S. Ct. at 2648. (Footnotes omitted.)

In *Bionic Auto Parts & Sales, Inc.* v. *Fahner* (C.A. 7, 1983), 721 F. 2d 1072, 1078-1079, the United States Court of Appeals, in reviewing an Illinois statute and an administrative rule promulgated thereunder authorizing warrantless searches of automobile parts dealers, scrap processors, and parts rebuilders, stated the following:

"The determinative factors to be considered are whether the industry affected is so closely regulated as to provide notice of the prospect of governmental intrusion and whether the statutory scheme enacted 'provides an adequate substitute for a warrant in terms of the certainty and regularity of its application.' * * * To satisfy the 'certainty and regularity' requirement, the inspection program must define clearly what is to be searched, who can be searched, and the frequency of such searches * * *. * * * [T]he degree and extent of past regulation comprise but a part, albeit a substantial part, of a determination of 'a reasonable expectation of privacy' under the Fourth Amendment. Otherwise, no protections at all would be appropriate in closely regulated industries. The Fourth Amendment requires that a determination of the reasonableness of the intrusion be made. Even in closely regulated industries, the inspection provisions still must be tailored to the state's proper objectives, and they must minimize the dangers inherent in the unbridled exercise of administrative discretion."

Unlike the statute in *Bionic Auto Parts & Sales, Inc.* v. *Fahner, supra,* R.C. 4301.10 fails to provide the liquor license holder with adequate safeguards for an inspection scheme. The court of appeals in *Bionic Auto Parts & Sales, Inc.* reviewed these safeguards:

"The revised Illinois Vehicle Code does limit the discretion of Illinois state officials in several important respects. First, § 5-403(1) * * * delineates specifically what is to be searched, namely, those parts of the business establishment 'used by the licensee to store vehicles and parts that are reflected by the required books and records.' Thus, unlike the statutory scheme held to be overbroad in *Marshall, supra,* 436 U.S. at 323-24 & nn. 21-22, inspectors under the Illinois statute cannot roam at will throughout the business premises. *United States, ex rel. Terraciano,* v. *Montanye,* 493 F. 2d 682, 684-85 (2d Cir. 1974) (holding permissible warrantless inspections that are 'statutorily limited to the business records and goods of industries that are properly subject to intensive regulation in the public interest'). Second, the statute describes how searches are to be conducted, confining them to 'any time that business is being conducted,' allowing the licensee or a representative to be present, and placing a maximum limit of twenty-four hours upon any search. Those constraints minimize the intrusiveness of the search. *Wayne Consumano, Inc.* v.

*Block,* 692 F. 2d 1025, 1028-29 (5th Cir. 1982) (approving warrantless searches limited to ordinary business hours). Finally, no more than six inspections of an establishment may be conducted within any six-month period, thus placing another limit on inspectors' discretion which was not present in *Marshall, supra.* While the buffer of an independent magistrate might constrain officials even further, the statutory scheme here involved narrowly defines what is to be searched, who may be present, how long the search may last, and how often it may take place. In light of the safeguards placed on the inspection, an administrative warrant requirement would add only marginally if at all to the licensee's right of privacy. *Biswell, supra,* 406 U.S. at 316; *Camara, supra,* 387 U.S. at 539." *Bionic Auto Parts & Sales, Inc.* v. *Fahner, supra,* at 1080.

Clearly, the United States Supreme Court and courts applying the law as announced by the Supreme Court have established a strict but reasonable requirement that where the premises of a person operating a licensed business are searched by agents of the licensing authority acting pursuant only to their administrative authority and without the sanction of a judge or magistrate, the search must be executed pursuant to statutory standards that limit the scope, time, and place of the search. In the present case, there were no restraints on the discretion of the investigators. R.C. 4301.10 contains no limitations on the hours of administrative searches. It fails to delineate what may be searched. In fact, the search here was made without a request to inspect the club's records. The statutory standard found in R.C. 4301.10 is therefore not sufficiently specific and narrow. See *United States* v. *Ciaccio* (D. Md. 1972), 356 F. Supp. 1373, 1377. "* * * [T]he Fourth Amendment protects the interest of the owner of property in being free from *unreasonable* intrusions onto his property by agents of the government. Inspections of commercial property may be unreasonable if they are not authorized by law or are unnecessary for the furtherance of [state] interests." *Donovan* v. *Dewey* (1981), 452 U.S. 594, 599. Our review of the case law and our application of R.C. 4301.10(A)(4), (6), and (7) and Ohio Adm. Code 4301:1-1-53[5] cause us to conclude that they are unconstitu-

---

[5] Ohio Adm. Code 4301:1-1-53, which the appellee state of Ohio contends permits the Department of Liquor Control to conduct warrantless administrative searches, states the following:

"(A)  Conviction in any court of competent jurisdiction of any holder of any permit, or of his agent or employee, or of any person, for keeping, exhibiting for gain, operating gambling devices, or conducting or permitting on such premises any games of chance, shall be grounds for suspension or revocation of such permit or permits.

"(B)  No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any gambling device as defined in division (F) of section 2915.01 of the Revised Code which may or can be used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code.

"(C)  This rule does not apply to the selling of lottery tickets authorized and issued by the Ohio state lottery commission and as provided in section 4301.03 of the Revised Code.

"(D)  This rule shall not be construed to prohibit a game or contest sponsored and conducted in accordance with division (D) of section 2915.02 of the Revised Code, provided that such game or contest is not sponsored or conducted by the holder of a D-4

tional insofar as they fail to establish time, place, and scope limitations on warrantless administrative searches of liquor establishments by agents of the Department of Liquor Control. The warrantless administrative search by agents of the Department of Liquor Control in this case, therefore, was unreasonable.

## II

Further, a warrantless administrative search may not be used to obtain evidence of general criminality. In *State* v. *Akron Airport Post No. 8975* (1985), 19 Ohio St. 3d 49, 19 OBR 42, 482 N.E. 2d 606, syllabus, this court held that R.C. 4301.10(A)(7) "* * * does not empower law-enforcement officers who are not liquor department agents or employees to enter and search a liquor permittee's premises for 'evidence of general criminality' with the intent to charge the permittee with any violations contained in R.C. Title 29." In that case, the court cited with approval *Carter* v. *State* (Fla. App. 1970), 238 So. 2d 681, wherein

the conviction of the defendant for receiving stolen property was overturned on the grounds that the state liquor control laws, which provided for administrative inspections, could not be the basis for a search for evidence of general criminality. The Florida Court of Appeals stated the following at 683: "* * * [T]he authority of a beverage agent to search the premises of a beverage licensee without a search warrant is restricted to occasions in which the beverage agent is acting in good faith 'in the enforcement of the beverage law and the cigarette tax law of this state, and in the prosecution of offenders against such laws.' " The court in *State* v. *Akron Airport Post No. 8975* also quoted *Finn's Liquor Shop, Inc.* v. *State Liquor Auth.* (1969), 24 N.Y. 2d 647, 658, 249 N.E. 2d 440, 445, that "* * * [n]o State may require, as a condition of doing business, a blanket submission to warrantless searches at any time and for any purpose. * * *" The state should not be permitted to do under the state liquor laws what it is prohibited from other-

---

permit and shall not prohibit an F or F-2 liquor permit holder from conducting schemes of chance and certain games of chance in accordance with division (D) of section 2915.02 of the Revised Code.

"(E) The foregoing paragraphs do not prohibit conduct by any person authorized to sell alcoholic beverages in the original container or for consumption on the permit premises to the extent that he may sponsor or conduct upon the permit premises promotional games or contests which are neither games nor schemes of chance and which do not constitute gambling or public gaming as proscribed in Chapter 2915. of the Revised Code provided that:

"(1) The promotion or contest does not require the participant to pay money or something of value other than visiting the premises for the privilege or opportunity to participate in such promotions or contests

or for receiving the award or prize therefrom, and

"(2) Alcoholic beverages are not an element of such a game or contest either directly or indirectly, and

"(3) The game or contest is sponsored or designed and run by a permit holder who is licensed for the sale of alcoholic beverages, a manufacturer whose main product line is not alcoholic beverages or their advertising agent or representative.

"For the purposes of this rule, the phrase 'something of value' means money or property, any token, object or article exchangeable for money or property, or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge."

wise doing. Extending *State* v. *Akron Airport Post No. 8975, supra,* to this case, we hold that evidence obtained as a result of a warrantless administrative search may not be used in a criminal prosecution under a statute of general criminality not related to provisions of R.C. Chapters 4301 and 4303.

## III

Appellant next contends that R.C. 2915.02 should not apply to fraternal organizations which are tax exempt under Sections 501(a) and (c)[6] of the Internal Revenue Code and defined as "charitable organizations" under R.C. 2915.01(H)[7] since they are statutorily organized and defined for non-profit purposes. Because we reverse the court of appeals' judgment on the issue of whether the warrantless administrative search in the case *sub judice*

complied with the protections found in the federal Constitution and the Ohio Constitution, we do not here reach the merits of appellant's second contention.

## IV

Appellant's last contention is that mere possession of a gambling device is not a violation of R.C. 2915.02(A)(5). Recently, this court stated in *Garono* v. *State* (1988), 37 Ohio St. 3d 171, 175, 524 N.E. 2d 496, 500, that "mere possession of * * * [a gambling] device is insufficient to find a violation of the gambling laws. Such a device becomes contraband only if it is or is intended to be used to violate the gambling laws under R.C. Chapter 2915. See R.C. 2901.01(M)(6) and 2915.02(A)(5). Therefore, in order for possession of a gambling device to be illegal, it must be acquired, possessed, controlled, or

---

[6] Section 501 provides for exemption from taxation for, among others, "[d]omestic fraternal societies, orders, or associations, operating under the lodge system— (A) the net earnings of which are devoted exclusively to religious, charitable, scientific, literary, educational, and fraternal purposes, and (B) which do not provide for the payment of life, sick, accident, or other benefits." Section 501(c)(10), Internal Revenue Code (1986).

[7] R.C. 2915.01(H) provides:

" 'Charitable organization' means any tax exempt religious, educational, veteran's, fraternal, service, nonprofit medical, volunteer rescue service, volunteer firemen's, senior citizen's, youth athletic, or youth athletic park organization. An organization is tax exempt if the organization is, and has received from the internal revenue service a determination letter that is currently in effect, stating that the organization is, exempt from federal income taxation under subsection 501(a) and described in subsection 501(c)(3), 501(c)(4), 501(c)(8), 501(c)(10), or 501(c)(19) of the Internal Revenue Code. To qualify as a chari-

table organization, an organization, except a volunteer rescue service or volunteer firemen's organization, shall have been in continuous existence as such in this state for a period of two years immediately preceding either the making of an application for a bingo license under section 2915.08 of the Revised Code or the conducting of any scheme of chance or game of chance as provided in division (C) of section 2915.02 of the Revised Code."

See, also, R.C. 2915.01(M), which provides:

" 'Fraternal organization' means any society, order, or association within this state, except a college or high school fraternity, that is not organized for profit, that is a branch, lodge, or chapter of a national or state organization, that exists exclusively for the common business or brotherhood of its members, and that has been in continuous existence in this state for a period of five years."

R.C. 2915.02(D) permits charitable organizations such as VFW Post 3562 to conduct games of chance under limited circumstances.

operated with the purpose to '[e]stablish, promote, or operate, or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit.' R.C. 2915.02(A)(2) and (5)." Given our holdings that the warrantless administrative search of VFW Post 3562 was illegal and that evidence obtained as a result of a warrantless administrative search may not be used in a criminal prosecution under a statute of general criminality not related to provisions of R.C. Chapters 4301 and 4303, the fruit of that search, the club's records, should have been suppressed. Given the absence then of any evidence indicating that VFW Post 3562 engaged in conduct facilitating any scheme or game of chance conducted for profit, appellant's conviction for violation of R.C. 2915.02(A)(5) must be reversed. Accordingly, we reverse the judgment of the court of appeals.

*Judgment reversed.*

SWEENEY, LOCHER, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.