Richard L. Jarvis appeals from a judgment of the Montgomery County Court of Common Pleas, which, following his entry of a no contest plea, found him guilty of aggravated trafficking, in violation of R.C. 2925.03(A)(7), and sentenced him accordingly. Jarvis was indicted on August 22, 1995 on four counts of selling or offering to sell controlled substances, specifically Vicodin ES containing Hydrocodone, Hydrocodone, Percodan containing Oxycodone, and Percocet containing Oxycodone. On May 29, 1996, Jarvis filed a motion to suppress the evidence seized during a warrantless search of his pharmacy, The Medicine Shoppe ("pharmacy"), and the evidence later obtained from information gathered during the search.
The evidence, presented at the May 8, 1996 suppression hearing, and documents, attached to Jarvis' motion to suppress, established the following:
During the morning hours of November 28, 1994, Frederick C. Williams, a compliance agent for the Ohio State Board of Pharmacy, and Detective Gary Gabringer of the Dayton Police Department went to the pharmacy and informed Jarvis that they were there to follow up on a previous forged-prescription complaint against him and to conduct a compliance inspection. Williams showed Jarvis his business card, which stated his name, place of employment, and the following request:
 You are requested to permit the above-named agent to inspect all drug stocks and records pursuant to O.R.C. Section 3719.27 and O.A.C. Rule 4729-5-17.
While Jarvis was speaking on the telephone, Williams and Gabringer observed several prescription vials on the counter. Without picking up the vials, Williams saw the names of Walter Johnson and two different physicians on the prescription labels. The labels also revealed the contents to be either Vicodin or a generic form of Vicodin. While Jarvis continued to talk on the telephone, Williams and Gabringer walked to the back of the pharmacy to do paperwork. While discussing the unusually large quantity of Vicodin and the fact that two different physicians had prescribed the drugs for one person, Williams and Gabringer decided to search the files for Vicodin prescriptions filled the previous day. When Williams went back to the counter to question Jarvis about the Vicodin, he saw a one-legged man with crutches getting into his car in the pharmacy parking lot and noticed that the prescription vials were no longer on the counter. Jarvis told Williams that the customer had picked up the prescription vials. When Williams informed Gabringer of his observations, Gabringer remembered that he had arrested Johnson on two previous occasions for forged prescriptions. Williams then approached Jarvis and asked to see Johnson's patient profile, and Jarvis produced it. Williams and Gabringer reviewed this file and the Schedule II drug file. Gabringer found five photocopies of Percodan and Percocet prescriptions written for Johnson in the Schedule II drug file. Williams and Gabringer also obtained a computer printout of dispensations made to Johnson.
Williams and Gabringer then left the premises and went somewhere to discuss the situation involving Johnson. Gabringer showed Williams photographs of Johnson that he had used in a previous investigation, and Williams identified Johnson as the customer he had seen leaving the pharmacy that morning. They returned to the pharmacy later that day. The record does not reflect what actions were taken by Williams and Gabringer upon their return.
After the November 28, 1994 search, a criminal investigation of Jarvis was initiated. On December 2, 1994, Williams and Gabringer showed Johnson's patient profile, which they had taken from the pharmacy, to both physicians' whose names appeared on the prescription labels. Both physicians stated that they had not prescribed the drugs in question for Johnson. During surveillance activities at the pharmacy on December 12, 1994, Gabringer observed Johnson entering and exiting the pharmacy and walking with Jarvis to Johnson's vehicle. Gabringer followed Johnson and made contact with him. At that time, Johnson had bottles of Vicodin and Vicodin ES in his possession. After being advised of his Miranda rights, Johnson stated that, although he had not obtained any physician's prescriptions for these drugs, Jarvis had been selling him Vicodin, Percodan, and Percocet. Gabringer then obtained a search warrant for all records related to the dispensation of medication to Johnson. On that same day, the warrant was executed, and the following items were seized: prescriptions for Vicodin, Vicodin ES, and Percodan or its equivalent; two bottles of tablets; controlled substances inventory information; a poison register; various computer equipment; and daily printouts for 1994.
Jarvis' motion to suppress alleged that the evidence obtained as a result of the warrantless search of the pharmacy should be suppressed because the search had violated his rights guaranteed by the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution. On July 29, 1996, the trial court denied Jarvis' motion to suppress evidence.
On November 30, 1995, Jarvis filed a motion for a court order requiring the state to provide him with samples of the substances forming the basis of the charges against him. The trial court granted this motion on December 19, 1996. On December 30, 1996, Jarvis filed a motion to dismiss counts three and four of the indictment because the state had not produced samples of Percodan or Percocet. He asserted that he had been denied his rights under R.C. 2925.51 to perform an independent analysis on these substances or to have his own analyst present during the state's laboratory analysis of them. At the January 6, 1997 hearing on this motion, the state asserted that officials had not seized Percodan or Percocet and that evidence of these substances would not be used at trial. The trial court denied Jarvis' motion.
On that same day, Jarvis entered a no contest plea to count three, which charged that, in violation of R.C. 2925.03(A)(7), he had knowingly sold or offered to sell "Percodan containing Oxycodone, a Schedule II Drug, in an amount equal to or exceeding three (3) times the bulk amount, but in an amount less than one hundred (100) times that amount." In exchange for this plea, the state dismissed counts one, two, and four. Following the entry of Jarvis' no contest plea, the trial court sentenced him to a term of imprisonment of not less than five years actual incarceration nor more than twenty-five years, suspended his driver's license for one year, and imposed a $7,500 fine. The trial court continued Jarvis' "conditional own recognizance" bond pending this appeal.
Jarvis raises three assignments of error on appeal.
 I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS.
Jarvis contends that the trial court deprived him of his right to freedom from unreasonable searches and seizures by overruling his motion to suppress evidence obtained as a direct and indirect result of the warrantless search of the pharmacy.
The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee protection against unreasonable searches and seizures by government officials. Although a warrantless search is per se
unreasonable, Katz v. U.S. (1967), 389 U.S. 347, 357, the state may establish its validity by showing the applicability of a judicially recognized exception to the warrant requirement. Statev. Akron Airport Post No. 8975 (1985), 19 Ohio St.3d 49, 51. The warrant requirement and the exceptions thereto apply to administrative inspections of commercial premises as well as private homes. Marshall v. Barlow's, Inc. (1978), 436 U.S. 307,311-313; See v. Seattle (1967), 387 U.S. 541, 543; Camara v.Municipal Court of San Francisco (1967), 387 U.S. 523, 534.
A warrantless administrative search is valid when conducted by an agent acting under his licensing authority and executed "pursuant to statutory standards that limit the scope, time, and place of the search." State v. VFW Post 3562 (1988), 37 Ohio St.3d 310,314. The "administrative search" exception applies to pervasively regulated businesses, including pharmacies. Stone v.Stow (1992), 64 Ohio St.3d 156, 164-165.
In Stone, the court upheld the constitutionality of Ohio's statutory and administrative scheme for warrantless administrative searches of pharmacies because it satisfied the standards set forth in New York v. Burger (1987), 482 U.S. 691, 702-703.
Warrantless administrative searches of pharmacies are governed by R.C. 3719.13, R.C. 3719.27, and Ohio Adm. Code4729-5-17. R.C. 3719.13 provides that prescriptions, orders, and records required by R.C. Chapter 3719 must be open for inspection by government officers and employees of the state board of pharmacy who enforce laws relating to controlled substances. R.C.3719.27 states:
 Persons required, by Chapter 3719 of the Revised Code, to keep files or records shall, upon the written request of an officer or employee designated by the state board of pharmacy, make such files or records available to such officer or employee, at all reasonable hours, for inspection and copying, and accord to such officer or employee full opportunity to check the correctness of such files or records, including opportunity to make inventory of all stocks of controlled substances on hand. No person shall fail to make such files or records available or to accord such opportunity to check their correctness.
Former Ohio Adm. Code 4729-5-17, the record keeping provision in effect on the date of the search, provided:
 (F) All records of dispensing drugs shall be readily available, and promptly produced, upon request for inspection by a board of pharmacy officer, agent, and/or inspector during regular business hours.
 (G) Records of dispensing or administration of drugs are not a public record. A person having custody of, or access to, such records shall not divulge the contents thereof, or provide a copy thereof, to anyone except:
* * *
 (4) A member, inspector, agent, or investigator of the board of pharmacy or any federal, state, county, or municipal officer whose duty is to enforce the laws of this state or the United States relating to drugs and who is engaged in a specific investigation involving a designated person or drug. * * *
 (H) Records of dispensing or administering drugs which may be required as evidence of a violation shall be released to a member, inspector, agent, or investigator of the board of pharmacy or any state, county, or municipal officer whose duty is to enforce the laws of this state or the United States relating to drugs and who is engaged in a specific investigation involving a designated person or drug upon his request. * * *
To survive a constitutional challenge, a particular warrantless administrative search must have been conducted pursuant to these guidelines, VFW Post 3562, 37 Ohio St.3d at 314, and must not have been "used to obtain evidence of general criminality." Id. at 315. "[T]he board cannot act as a surrogate for the police to obviate the constitutional duty of obtaining a search warrant." State v. Penn (1991), 61 Ohio St.3d 720, 726. However, the "discovery of evidence of crimes in the course of an otherwise proper administrative inspection does not render that search illegal or the administrative scheme suspect." Burger,482 U.S. at 716. Furthermore, it is immaterial whether the officials intended to pursue criminal charges so long as there had been "an independent administrative justification" for the search and the officials acted within the scope of the regulatory scheme. U.S.v. Watson (C.A.9, 1982), 678 F.2d 765, 771. In Hamilton v. Lokuta
(E.D.Mich. 1992), 803 F. Supp. 82, 86, the court stated:
 It is immaterial that [the officers] had the intent to substantiate criminal charges rather than mere regulatory violations. The decision whether [the accused persons] would be criminally charged or merely face administrative actions against the liquor license is in the hands of the prosecutor and not [the officers]. (Citations omitted).
Thus, the administrative search exception will validate a warrantless search of a pharmacy even if the officials intended to pursue criminal charges so long as, under Ohio's scheme, there had been an independent administrative justification for the search.
In reviewing the trial court's denial of Jarvis' motion to suppress evidence, we accept the factual findings if they were supported by competent and credible evidence. State v. Terry (Feb. 28, 1997), Montgomery App. No. 15796, unreported. The trial court concluded that the administrative search exception justified Williams' and Gabringer's conduct on November 28, 1994 because the warrantless search "was sufficiently limited in time, scope, and place." Pursuant to their authority under R.C. 3719.13, R.C.3719.27, and Ohio Adm. Code 4729-5-17, Williams and Gabringer lawfully entered the pharmacy to follow up on the prior complaint against Jarvis for forging prescriptions and to conduct a routine compliance inspection. After their suspicions had been aroused by the prescription vials on the counter, Williams and Gabringer acted reasonably in attempting to confirm or dispel their suspicions of forged prescriptions by requesting information on dispensations of Vicodin made to Johnson. It is immaterial whether, after observing the Vicodin on the counter, Williams and Gabringer had intended to substantiate criminal charges because they had an independent administrative justification for the search. Having lawfully entered the pharmacy, Williams and Gabringer were not required to ignore evidence of other criminality. See Burger, 482 U.S. at 716. Thus, the warrantless search of the pharamacy was valid under the administrative search exception, and the trial court correctly refused to suppress the evidence resulting directly and indirectly from the search.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED IN FAILING TO DISMISS COUNTS THREE AND FOUR OF THE INDICTMENT AS THE STATE FAILED TO PROVIDE SAMPLES OF THE SUBJECT DRUGS PURSUANT TO ORC SECTION 2925.51 IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHT OF CONFRONTATION.
Jarvis contends that the state failed to provide him with samples of Percodan and Percocet and thereby deprived him of the right, set forth in R.C. 2925.51, to obtain a portion of the substances forming the basis of the drug charges. Jarvis asserts that because he had been denied the right to confront evidence against him, as guaranteed by the Sixth Amendment and Article One, Section Sixteen of the Ohio Constitution, the trial court should have dismissed counts three and four of the indictment.
Pursuant to R.C. 2925.51(E), a person accused of violating Chapters 2925 or 3719 is entitled, upon written request to the prosecutor, "to have a portion of the substance that is the basis of the alleged violation preserved for the benefit of independent analysis" performed by his privately employed analyst or, in the case of indigency, a court-appointed analyst. If a sample cannot be preserved for independent analysis, the accused, upon written request, is entitled to have his privately employed or court-appointed analyst present during the state's laboratory testing. Dismissal of the charges is an appropriate remedy for an accused when the state had seized and tested the drugs but deprived the accused of his rights under R.C. 2925.51(E). Statev. Riley (1990), 69 Ohio App.3d 509, 511; State v. Bross (Oct. 29, 1990), Butler App. No. CA90-04-079, unreported; State v. Kelly
(July 2, 1992) Mahoning App. No. 91 C.A. 166, unreported; State v.Smallwood (Jan. 25, 1988), Clermont App. No. CA 87-08-066, unreported.
We disagree with Jarvis that he was deprived of his rights under R.C. 2925.51(E). R.C. 2925.51(E) does not require the state to preserve or permit access to substances of which it never took possession. Moreover, because "R.C. 2925.51 does not provide a sanction for the state's failure to provide a sample for independent analysis," the accused must establish a violation of his constitutional rights to obtain a remedy. State v. Smith (Mar. 16, 1994), Lorain App. No. 93CA005585, unreported. We disagree with Jarvis that the state infringed on his right of confrontation by failing to produce substances that were not to be used as evidence against him at trial. Because the state did not deprive Jarvis of the opportunity to confront evidence to be used against him at trial, the trial court acted appropriately in refusing to dismiss counts three and four of the indictment.
The second assignment of error is overruled.
 III. THE TRIAL COURT ERRED IN FAILING TO SENTENCE APPELLANT UNDER THE NEW SENTENCING STATUTE, AM.SUB.S.B. NO. 2.
Jarvis contends that the trial court should have sentenced him pursuant to Am.Sub.S.B. 2 ("Senate Bill 2"), which took effect on July 1, 1996, because, although he was indicted for offenses occurring before that date, he was convicted and sentenced after July 1, 1996. Jarvis urges that he would have received a reduced sentence under Senate Bill 2 and, therefore, R.C. 1.58 required the trial court to impose the reduced sentence.
R.C. 1.58(B) provides:
 If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.
Section 3 of S.B. 269 amended Section 5 of Senate Bill 2 as follows:
 The provisions of the Revised Code in existence prior to July 1, 1996, shall apply to a person upon whom a court imposed a term of imprisonment prior to that date and, NOTWITHSTANDING DIVISION (B) OF SECTION 1.58 OF THE REVISED CODE, to a person upon whom a court, on or after that date and in accordance with the law in existence prior to that date, IMPOSES a term of imprisonment for an offense that was committed prior to that date.
In State v. Hurston (Nov. 7, 1997), Montgomery App. No. 16217, unreported, we confronted an identical situation where the accused had been charged with an offense occurring before July 1, 1996 but was convicted and sentenced after that date. We stated:
 In our view, this language demonstrates a clear legislative intent that S.B. 2 applies only to crimes committed on or after July 1, 1996. Furthermore, the provision expressly excludes application of R.C. 1.58 in the present case.
Because we continue to understand Senate Bill 2, as amended, to apply only to crimes committed on or after July 1, 1996, we disagree with Jarvis that, because he was convicted and sentenced after that date, the new sentencing provisions should have been applied to his case.
Jarvis' third assignment of error is overruled.
The judgment of the trial court will be affirmed.
YOUNG, P.J. and GRADY, J., concur.
Copies mailed to:
John J. Amarante
David P. Williamson
Hon. Barbara P. Gorman