DECISION AND JUDGMENT ENTRY
{¶ 1} In this appeal from a judgment of the Lucas County Court of Common Pleas, appellant, John K. Moussaed, appeals his conviction for a violation of R.C. 2913.51, receiving stolen property, a felony of the fifth degree. Appellant maintains that the following error occurred during the trial court proceedings:
 {¶ 2} "The trial court erred in denying the motion to suppress evidence derived from a warrantless search not authorized by any exception to the warrant clause of the United States Constitution."
 {¶ 3} On July 24, 2002, Earl Mack, an agent of the Ohio Department of Public Safety Investigative Unit, was contacted by Tony Elitawi, the owner of an Ohio-licensed liquor store. Agent Mack's job is, among other things, to investigate alleged violations of R.C. Chapter 4301 and Chapter 4303, and the administrative rules promulgated thereunder, by liquor permit holders.
 {¶ 4} Tony Elitawi informed Agent Mack that Tony's brother, Alihassan Elitawi, was stealing liquor from the store. Agent Mack also learned that the Toledo Police Department investigated a theft that had occurred that morning and found four cases of liquor in the dumpster behind Tony's store.
 {¶ 5} Agent Mack then talked to Alihassan, who admitted the theft. Alihassan told Agent Mack that he intended to sell the four cases of liquor to appellant. Delivery was scheduled for 6:00 p.m. that evening at appellant's bar, "Hot Shotz," located in Toledo, Lucas County, Ohio. Alihassan also told Agent Mack that this was not the first time that he sold liquor to appellant.
 {¶ 6} Agent Mack determined that Alihassan should deliver the liquor to appellant as planned. However, the bottles in the four cases were marked by the investigative unit so that they could be identified during a subsequent administrative search of Hot Shotz. In addition, Agent Mack contacted the Toledo Police Department. According to Mack, the purpose of the contact was to request "back-up" when he and his agents conducted the search of Hot Shotz.
 {¶ 7} At the appointed time, Agent Mack observed Alihassan's delivery of the stolen liquor to a garage that was connected to Hot Shotz. Mack then saw appellant meet with Alihassan near the garage door. Alihassan and the members of the investigative unit returned to Tony's liquor store where Alihassan gave Agent Mack the $410 allegedly received in exchange for the four cases of liquor.
 {¶ 8} State agents and members of the Toledo Police Department Vice Squad then returned to Hot Shotz to conduct an administrative search of the premises. Detective James Dec testified that the search had the dual purpose of recovering the stolen liquor and determining whether the bar was "up to code" with regard to licensing. He insisted, nonetheless, that he "was purely there to assist Agent Mack and his agents."
 {¶ 9} Upon his arrival at Hot Shotz, Detective Dec, per his instructions from Agent Mack, went to the garage where the marked bottles of liquor were delivered. A doorway from the garage was part of and led directly to the bar's kitchen. According to Dec, a "secondary door went into what was described as an office."
 {¶ 10} Dec observed a black pick-up truck parked with its bed next to and facing the open garage door. A young man, who was later identified as appellant's son, was working on the truck. The detective, who was in plain clothes, waited a few minutes, pulled out his badge, and went into the bar through the kitchen to check on the safety of the agents.
 {¶ 11} When Dec returned to the garage, he saw appellant loading a box of liquor onto the pick-up. The three other cases of liquor were already on the truck. After determining that appellant was not armed, the detective called to the agents in the bar for assistance. The box that appellant was loading contained marked bottles. Mack found three additional boxes of liquor in a cabinet in the garage. Appellant subsequently admitted that Alihassan had "delivered" the additional liquor to Hot Shotz, but he also claimed that Alihassan was "coming back for" it. It is undisputed that neither Agent Mack nor any member of the Toledo Police Department Vice Squad obtained a search warrant prior to entering and searching Hot Shotz.
 {¶ 12} Based on the foregoing facts, the Lucas County Grand Jury indicted appellant on one count of receiving stolen property, specifically, the seven cases of liquor delivered by Alihassan to appellant. Appellant filed a motion to suppress all evidence, including statements obtained as a result of the warrantless search of appellant's office and garage. Appellant claimed that this search violated his rights under the Fourth Amendment to the United States Constitution and Section14, Article I, Ohio Constitution.
 {¶ 13} The trial court denied appellant's motion to suppress. Appellant then withdrew his plea of not guilty and entered a plea of no contest, was found guilty, and was sentenced.
 {¶ 14} When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of a witness. State v. Mills (1992), 62 Ohio St.3d 357, 366. Consequently, in its review, an appellate court must accept the trial court's findings of fact as true if they are supported by competent, credible evidence. Statev. Guysinger (1993), 86 Ohio App.3d 592, 594. The appellate court must then independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. Id.
 {¶ 15} In the case before us, appellant advances two reasons for finding that the trial court erred in denying his motion to suppress. First, he contends that the search conducted by Agent Mack in conjunction with members of the Toledo Police Department Vice Squad was to find evidence of general criminality, that is, evidence that appellant was receiving stolen property in violation of R.C. 2913.51. Appellant cites to State v. VFW Post 3562 (1988), 37 Ohio St.3d 310, paragraph two of the syllabus, for the proposition that the cases of liquor, and any statements made by appellant related to that liquor, could not be used in his criminal prosecution because the crime of receiving stolen property is not related to the "provisions of R.C. Chapters 4301 and 4303." For the following reasons, we conclude that this rule is not implicated in this case.
 {¶ 16} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution provide protection against unreasonable searches and seizures by government officials. A warrantless search is generally considered unreasonable per se. Katz v.United States (1967), 389 U.S. 347, 357. Nevertheless, the state can establish the validity of a warrantless search by demonstrating that one of the judicially created exceptions to the warrant requirement applies. Statev. Akron Airport Post 8975 (1985), 10 Ohio St.3d 49, 51. The state bears the burden of proving that one of these exceptions applies in order to prevail on a defendant's' motion to suppress. State v. McFarland (2002),150 Ohio App.3d 396, 2002-Ohio-6353 at ¶ 9, citing State v. Kessler
(1978), 53 Ohio St.2d 204, 207.
 {¶ 17} A warrantless administrative search of a liquor establishment is one of the exceptions to the warrant requirement. Statev. VFW Post 3562, 37 Ohio St.3d at 312, citing Colonnade Catering Corp.v. United States (1970), 397 U.S. 72. However, the warrantless administrative search is valid only when the agent or other authorized official acts under his or her licensing authority, and the search is executed "pursuant to statutory standards that limit the scope, time, and place of the search." Id. at 314. Furthermore, a warrantless administrative search may not be used for the sole purpose of obtaining evidence of general criminality. Stone v. Stow (1992), 64 Ohio St.3d 156, Id. at ¶ two of the syllabus.
 {¶ 18} Nonetheless, the fact that police officers who have the authority to enforce criminal laws are involved in an administrative search does not mean that the "administrative search" exception is inapplicable. Id. at 165. Rather, the "discovery of evidence of crimes in the course of an otherwise proper administrative inspection does not render the search illegal or the administrative scheme suspect." New Yorkv. Burger (1987), 482 U.S. 691, 716; State v. Jarvis (Feb. 13, 1998), Montgomery App. No. 16388. Additionally, it is irrelevant "whether officials intended to pursue criminal charges so long as there is an `independent administrative justification' for the search and the official acted within the scope of the regulatory scheme." Jarvis, supra, citing U.S. v. Watson (C.A. 9, 1982), 678 F.2d 765, 771.
 {¶ 19} R.C. 4301.10(A)(6) authorizes the Ohio Department of Commerce, Division of Liquor Control, to "[c]onduct inspections of liquor permit premises to determine compliance with the administrative provisions of this chapter and Chapter 4303. of the Revised Code and the rules adopted under those provisions by the liquor control commission." The evidence offered at appellant's trial established that, pursuant to R.C.4303.15, appellant was the holder of, among others, a D-3 liquor permit, which allows the sale of spirituous liquor, by the individual drink or container, in a retail food establishment. Ohio Adm. Code 4301:1-3-01 provides:
 {¶ 20} "No holder of a D-3, D-4, or D-5 permit shall either directly or indirectly, himself or through any agent, employee or other person, purchase spirituous liquor for resale from other than a state liquor store or state liquor agency at wholesale except pursuant to express written consent of the division."
 {¶ 21} As applied to the present case, Agent Mack received information that appellant was violating Ohio Adm. Code 4301:1-3-01. He therefore had an independent justification for conducting a warrantless administrative search of Hot Shotz. Jarvis, supra. Thus, "it is immaterial whether the [agents or] officers had the intent to substantiate any criminal charges rather than mere regulatory violations." New York v. Burger, 482 U.S. at 712; Jarvis, supra. We therefore conclude that the discovery of general criminal activity, specifically, receiving stolen goods, was incidental to the administrative search and not its objective. See State v. Desper (2002),151 Ohio App.3d 208, 2002-Ohio-7176 at ¶ 25. Accordingly, the rule set forth in the second syllabus of VFW Post 3562 is inapplicable to this cause, and appellant's first contention is without merit.
 {¶ 22} In the second argument offered in support of his assignment of error, appellant maintains that the search of Hot Shotz did not did not conform to Ohio Adm. Code 4301:1-1-79. This rule places restrictions on warrantless administrative inspections and provides, in pertinent part:
 {¶ 23} "(C) * * * [In]spections shall be conducted on that portion of the premises that is included as part of the licensed premises. * * * Additionally, the licensed premises shall include any part of that building or any other building connected with the licensed premises by direct access or by a common entrance and being used as a subterfuge or means of evading the provisions of Title XLIII of the Revised Code or of the rules of the commission. * * *."
 {¶ 24} "(D) This provision for warrantless administrative inspections includes but is not limited to the search and seizure of materials in locked closets, filing cabinets, cellars, attics, storage rooms, desks, and safes located on the licensed premises, so long as there is reasonable suspicion that evidence of violation of the liquor control act or the rules of the liquor control commission will be found therein. * * * Nothing in this rule shall be construed to contravene the plain view doctrine. In addition, any part of any other building connected with the licensed premises by direct access or by a common entrance and being used as a subterfuge or means of evading the provisions of Title XLIII of the Revised Code or of the rules of the commission will be subject to the same inspection. * * *."
 {¶ 25} Our reading of Ohio Adm. Code 4301:1-1-79 discloses that any portion of the licensed premises, including those portions connected to the premises by direct access or a common entrance, that are being used as a subterfuge or means of evading the strictures of R.C. Chapter 43 are subject to a warrantless administrative inspection. Further, so long as there is a reasonable suspicion that evidence of a violation of the rules of the liquor control act are being violated, any cabinets in those connected portions are subject to the same inspection.
 {¶ 26} Appellant claims that there is no evidence in the record to show that the garage was being "used as a subterfuge or means of evading" the provisions of R.C. Chapter 43. He concludes that in the absence of such evidence, the garage was not subject to a warrantless administrative search. Appellant further argues that Agent Mack lacked a reasonable suspicion to search "a cabinet in an office off the garage." For the following reasons, we find appellant's assertions are without merit.
 {¶ 27} Initially, we note that the cabinet in which Agent Mack found the three additional cases of liquor previously delivered to Hot Shotz by Alihassan was in the garage rather than the office. See T-40.
 {¶ 28} It is undisputed that the garage was connected to Hot Shotz by direct access or a common entrance, i.e., the kitchen and/or office. With regard to whether there was evidence of subterfuge or evasion, Agent Mack actually saw the cases containing the marked bottles of liquor being delivered to the garage. Later, when he entered Hot Shotz for an investigative search or inspection, Agent Mack asked the barmaid where appellant stored the bar's liquor. She pointed to the office. None of the cases of marked bottles were found in the office. Rather, they were found in a place, the garage, where the bar's liquor was not normally stored. Thus, the evidence showed that the garage was being used as a means of evading Ohio Adm. Code 4301:1-3-01. Agent Mack had a reasonable suspicion that evidence of a violation of Ohio Adm. Code 4301:1-3-01 might be found in the cabinet in the garage not only because the marked bottles of unauthorized liquor were found in that area, but also because he knew that this was not the first time that Alihassan made such a delivery.
 {¶ 29} For all of the foregoing reasons, the trial court did not err in denying appellant's motion to suppress, and his sole assignment of error is found not well-taken.
 {¶ 30} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair hearing, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
 JUDGMENT AFFIRMED.