STONE ET AL., APPELLANTS, *v.* CITY OF STOW ET AL., APPELLEES.

[Cite as *Stone v. Stow* (1992), 64 Ohio St.3d 156.]

(No. 91–693—Submitted March 18, 1992—Decided July 8, 1992.)

 
 

*Roderick, Myers & Linton, Robert F. Linton* and *Lawrence R. Bach,* for appellants.

*James Martin* and *James A. Merlitti,* for appellees city of Stow and Hudson Township.

*Charles E. Merchant,* for appellee village of Hudson.

*Richard L. Goldsmith, Jr.,* for appellee village of Munroe Falls.

*Richard A. Schunk,* Law Director, for appellee city of Tallmadge.

ALICE ROBIE RESNICK, J. In their appeal to this court, appellants contend that R.C. 3719.13, 3719.27, and Ohio Adm.Code 4729-5-17 violate both the right of privacy and the prohibition against unreasonable searches and seizures found in the United States and Ohio Constitutions. For the reasons which follow, we find that the statutory and regulatory program allowing officers and pharmacy board agents to inspect prescription records withstands constitutional scrutiny, based on the record before us, and we affirm the judgment of the court of appeals.

Appellants challenge the constitutionality of three different provisions: R.C. 3719.13 and 3719.27, and Ohio Adm.Code 4729-5-17.[1] Taken together, these

---

1. R.C. 3719.13 reads:

"Prescriptions, orders, and records, required by Chapter 3719. of the Revised Code, and stocks of dangerous drugs and controlled substances, shall be open for inspection only to federal, state, county, and municipal officers, and employees of the state board of pharmacy whose duty it is to enforce the laws of this state or of the United States relating to controlled substances. Such prescriptions, orders, records, and stocks shall be open for inspection by employees of the state medical board for purposes of enforcing Chapter 4731. of the Revised Code. No person having knowledge of any such prescription, order, or record shall divulge such knowledge, except in connection with a prosecution or proceeding in court or before a

provisions provide for the inspection of pharmacy prescription records, without a warrant, by state and local law enforcement officers and by employees of the State Board of Pharmacy.

## I

## The Right of Privacy

The first issue we address is whether the challenged provisions violate a right of privacy protected by the United States or Ohio Constitutions, and therefore are unconstitutional on their face, or as applied.

The United States Supreme Court, in *Roe v. Wade* (1973), 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147, 176, stated that a "right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the [United States] Constitution." While *Roe v. Wade* established that the right

---

licensing or registration board or officer, to which prosecution or proceeding the person to whom such prescriptions, orders, or records relate is a party."

R.C. 3719.27 reads:

"Persons required, by Chapter 3719. of the Revised Code, to keep files or records shall, upon the written request of an officer or employee designated by the state board of pharmacy, make such files or records available to such officer or employee, at all reasonable hours, for inspection and copying, and accord to such officer or employee full opportunity to check the correctness of such files or records, including opportunity to make inventory of all stocks of controlled substances on hand. No person shall fail to make such files or records available or to accord such opportunity to check their correctness."

Ohio Adm.Code 4729-5-17 reads, in pertinent part:

"(G) Records of dispensing or administration of drugs are not a public record. A person having custody of, or access to, such records shall not divulge the contents thereof, or provide a copy thereof, to anyone except:

" * * *

"(4) A member, inspector, agent, or investigator of the board of pharmacy or any federal, state, county, or municipal officer whose duty is to enforce the laws of this state or the United States relating to drugs and who is engaged in a specific investigation involving a designated person or drug.

" * * *

"(H) Records of dispensing or administering drugs which may be required as evidence of a violation shall be released to a member, inspector, agent, or investigator of the board of pharmacy or any state, county, or municipal officer whose duty is to enforce the laws of this state or the United States relating to drugs and who is engaged in a specific investigation involving a designated person or drug upon his request. Such person shall furnish a receipt to the person having legal custody of the records. The receipt shall list the records removed and shall include the following information:

"(1) Prescription identification number; or, if an order for medication, the name of the patient.

"(2) The drugs prescribed.

"(3) Quantity of drugs prescribed and dispensed.

"(4) Name of the prescribing practitioner.

"(5) Date, name of agency, and signature of person removing the records."

of privacy, based on the Fourteenth Amendment's concept of personal liberty, does exist in certain situations, it has been subsequent cases which have set the scope of the right. Thus, in *Paul v. Davis* (1976), 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405, 421, the United States Supreme Court stated that "the personal rights found in this guarantee of personal privacy must be limited to those which are 'fundamental' or 'implicit within the concept of ordered liberty' * * *." (Citing *Palko v. Connecticut* [1937], 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288, 292.)

In *Whalen v. Roe* (1977), 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64, the United States Supreme Court considered whether a New York statute, similar in some respects to the Ohio provisions at issue in the present case, violated a right of privacy. The New York statute required that physicians identify patients receiving prescriptions for certain drugs (labeled "Schedule II" drugs) which had both a recognized medical use and also a potential for abuse. The names and addresses of the patients were then recorded in a centralized computer file maintained by the state health department. Patients who regularly obtained prescriptions for the drugs, and physicians who prescribed the drugs for their patients, contended that the statute violated a constitutionally protected right of privacy.

The *Whalen* court found that at least two separate kinds of privacy rights were implicated in the case before it: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Id.*, 429 U.S. at 599–600, 97 S.Ct. at 876, 51 L.Ed.2d at 73.

In considering the first type of privacy interest, confidentiality in personal matters, the *Whalen* court found no constitutional violation. The court stated that the disclosures were not "meaningfully distinguishable from a host of other unpleasant invasions of privacy that are associated with many facets of health care." *Id.*, 429 U.S. at 602, 97 S.Ct. at 878, 51 L.Ed.2d at 75. The court noted that security measures were implemented to protect the data from disclosure, that the statute and a health department regulation expressly prohibited public disclosure, and that willful violation of the nondisclosure provisions had been made a crime. *Id.*, 429 U.S. at 594–595, 97 S.Ct. at 873–874, 51 L.Ed.2d at 70. The court further noted that "[t]here is no support in the record * * * for an assumption that the security provisions of the statute will be administered improperly." *Id.*, 429 U.S. at 601, 97 S.Ct. at 877, 51 L.Ed.2d at 74.

In considering the second type of privacy interest, autonomy in making personal decisions, the *Whalen* court also found no constitutional violation. While the court conceded that "[u]nquestionably, some individuals' concern

for their own privacy may lead them to avoid or to postpone needed medical attention * * *," the court concluded that "[r]equiring such disclosures * * * does not automatically amount to an impermissible invasion of privacy." *Id.*, 429 U.S. at 602, 97 S.Ct. at 878, 51 L.Ed.2d at 75.[2]

The *Whalen* court held "that neither the immediate nor the threatened impact of the patient-identification requirements in the * * * Act * * * on either the reputation or the independence of patients for whom Schedule II drugs are medically indicated is sufficient to constitute an invasion of any right or liberty protected by the Fourteenth Amendment." *Id.*, 429 U.S. at 603–604, 97 S.Ct. at 878, 51 L.Ed.2d at 76. The court found that "New York's statutory scheme, and its implementing administrative procedures, evidence a proper concern with, and protection of, the individual's interest in privacy." *Id.*, 429 U.S. at 605, 97 S.Ct. at 879, 51 L.Ed.2d at 77.

Appellants contend that Ohio's statutory scheme has several fundamental differences from the New York scheme challenged in *Whalen*, and that therefore the Ohio scheme violates the right of privacy while the New York scheme in *Whalen* did not. Appellants argue that, in allowing police officers access to the prescription records, the Ohio provisions impermissibly go beyond the New York scheme which allowed only employees of the state health department to have access to the records. We are somewhat troubled by police initiation of administrative searches. However, we do not believe that the fact of police initiation, alone, requires a finding that appellants' privacy rights have been violated. See *New York v. Burger* (1987), 482 U.S. 691, 717, 107 S.Ct. 2636, 2652, 96 L.Ed.2d 601, 623 ("So long as a regulatory scheme is properly administrative, it is not rendered illegal by the fact that the inspecting officer has the power to arrest individuals for violations other than those created by the scheme itself."). In *Whalen*, the United States Supreme Court made clear that whatever privacy rights were implicated in that case related to the disclosure of information to the *general public*. In the case at bar, as in *Whalen*, disclosure of the information to the public is legally prohibited. See R.C. 3719.13 (limiting situations in which the information may be divulged); R.C. 3719.99(D) (making improper disclosure a misdemeanor). On the state of the record before us, we cannot speculate that such unauthorized disclosure will inevitably occur.

Appellants also argue that the safeguards against disclosure contained in the Ohio scheme are not as extensive as those in the New York scheme at

---

2. The *Whalen* court pointed out that a state could, if it chose to do so, entirely prohibit the use of some drugs; and also that the New York scheme at issue in that case did not require a patient to get the consent of any state official in order to be prescribed a Schedule II drug. *Id.*, 429 U.S. at 603, 97 S.Ct. at 878, 51 L.Ed.2d at 75–76.

issue in *Whalen*. However, all that the record reveals is that unauthorized disclosure may occur. The threat of unauthorized disclosure was also present in *Whalen*, but was not viewed as significant enough to cause the New York statute to be declared unconstitutional. In the same way, we cannot say that an unreasonable invasion of privacy rights is involved here.

Appellants further argue that the second type of privacy interest discussed in *Whalen*, autonomy in making personal decisions, is more threatened in the case at bar than in *Whalen*. Appellants claim that the great possibility of public disclosure, and the involvement of police officers in the collecting of the information, act as deterrents to the patients' right to choose the most effective medical treatment available. However, nothing in the record convinces us that unacceptable burdens are being placed on the patients' freedom of choice. As stated previously, the record does not reveal that unauthorized disclosure will necessarily occur. In addition, Ohio Adm.Code 4729-5-17(G)(4) and (H) require that only officers " * * * engaged in a specific investigation involving a designated person or drug * * * " may gain access to the prescription records. These provisions place limits on the police officers' access to the records. Also, this program's objective is to collect data only on certain Schedule II and IV drugs which are considered to have an especially high potential for abuse.

Therefore, we agree with the trial court and the court of appeals before us, and find *Whalen* dispositive of the privacy issue raised by appellants. We decline to apply a balancing test which would weigh the need for officials to have access to prescription records, in the manner chosen by the General Assembly, against the deprivation of privacy caused by the statutory and administrative provisions. After finding that no significant threat is presented to appellants' right of privacy, we follow the lead of the *Whalen* court and choose not to apply any type of heightened scrutiny to the challenged scheme. See, also, *J.P. v. DeSanti* (C.A.6, 1981), 653 F.2d 1080, 1089 (*Whalen* created no general right to nondisclosure of private information).

## II

### Fourth Amendment Challenge

The next issue we consider is whether the statutory and administrative provisions at issue violate the prohibitions against unreasonable searches and seizures found in the United States and Ohio Constitutions.[3] In order for a

---

3. The Fourth Amendment to the United States Constitution provides:
 "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon

party to succeed in challenging a search on Fourth Amendment grounds: (1) that party must have a subjective expectation of privacy in the object of the search, and (2) society must be prepared to recognize that expectation as reasonable. See *Katz v. United States* (1967), 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (Harlan, J., concurring); *California v. Ciraolo* (1986), 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210, 215.

## A

### Pharmacists

We initially note that the Fourth Amendment protects only against searches which are *unreasonable.* For that reason, no warrant is required to conduct a search if the person being searched has no reasonable expectation of privacy in the object of the search. An administrative search may be conducted without a warrant if the statute authorizing the search does not interfere with a reasonable expectation of privacy protected by the Fourth Amendment.

*State v. VFW Post 3562* (1988), 37 Ohio St.3d 310, 525 N.E.2d 773, recognized that a warrantless administrative search could be a valid search in some circumstances. Even though the statutory and administrative provisions authorizing warrantless searches of liquor establishments did not withstand constitutional scrutiny in that case, the general validity of administrative searches in a proper situation was approved.

We agree with the conclusion reached in the instant case by the trial court and the court of appeals: Since a pharmacy is a pervasively regulated business, the "administrative search" exception to the warrant requirement applies to the circumstances of this case.[4] See *United States v. Acklen*

---

probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Section 14, Article I of the Ohio Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized."

Because the Ohio and federal provisions are very similar, we use the term "Fourth Amendment" to collectively refer to both the Fourth Amendment and Section 14, Article I.

4. In *State v. Penn* (1991), 61 Ohio St.3d 720, 576 N.E.2d 790, we listed the "judicially recognized exceptions" to the search warrant requirement:

" '(a) A search incident to a lawful arrest;

" '(b) consent signifying waiver of constitutional rights;

" '(c) the stop-and-frisk doctrine;

" '(d) hot pursuit;

" '(e) probable cause to search, and the presence of exigent circumstances; or

(C.A.6, 1982), 690 F.2d 70, 75; *Hosto v. Brickell* (1979), 265 Ark. 147, 153, 577 S.W.2d 401, 405; Annotation, State and Local Administrative Inspection of and Administrative Warrants to Search Pharmacies (1984), 29 A.L.R.4th 264. Being in such a pervasively regulated business, a pharmacist has a reduced expectation of privacy in the prescription records he or she keeps.

We further find that Ohio's statutory and administrative scheme providing for warrantless searches of prescription records satisfies the standards set forth in *New York v. Burger, supra,* 482 U.S. at 702–703, 107 S.Ct. at 2644, 96 L.Ed.2d at 614: It is clear that the state has a substantial interest in regulating prescription drugs; that the regulatory scheme created by the statutory and administrative provisions at issue serves that interest; and that the inspection scheme provides an adequate substitute for a warrant, because these provisions are "sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." *Donovan v. Dewey* (1981), 452 U.S. 594, 600, 101 S.Ct. 2534, 2539, 69 L.Ed.2d 262, 269. Finally, the time, place, and scope elements of the scheme are sufficiently limited so that the warrantless search procedure is reasonable. See *United States v. Biswell* (1972), 406 U.S. 311, 315, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87, 92. The files must be made available for inspection at reasonable hours only. R.C. 3719.27. Access is limited to officials who are "engaged in a specific investigation involving a designated person or drug." Ohio Adm.Code 4729–5–17(G)(4) and (H). Only certain Schedule II and IV drugs alleged to have a high potential for abuse are the objects of these searches.

The fact that police officers are involved in these administrative searches, and that those officers have the power to enforce penal laws, does not mean that the "administrative search" exception is inapplicable. As the *Burger* court stated: "[A] State can address a major social problem *both* by way of administrative scheme *and* through penal sanctions. * * * [A]n administrative scheme may have the same ultimate purpose as penal laws, even if its regulatory goals are narrower." (Emphasis *sic.*) 482 U.S. at 712–713, 107 S.Ct. at 2649, 96 L.Ed.2d at 620–621.

This is not a situation in which the police officers are attempting to use warrantless administrative searches to uncover evidence of general criminality. See *State v. Akron Airport Post No. 8975* (1985), 19 Ohio St.3d 49, 19

---

" '(f) the plain view doctrine."

*Id.* at 723–724, 576 N.E.2d at 793, quoting *State v. Akron Airport Post No. 8975* (1985), 19 Ohio St.3d 49, 51, 19 OBR 42, 43, 482 N.E.2d 606, 608.

We now explicitly add the "administrative search" exception to the list of acceptable warrantless search situations.

OBR 42, 482 N.E.2d 606, syllabus; *State v. VFW Post 3562, supra,* 37 Ohio St.3d at 315–316, 525 N.E.2d at 778 (officers conducted liquor inspection warrantless "administrative" search to look for gambling devices). Rather, in this situation, an administrative scheme set up to track particular often-abused Schedule II and IV drugs is also being used to detect the abuse of those very drugs. No *general* criminality is at issue in this case.

## B

### Physicians and Patients

In our discussion of the right of privacy and the implications of *Whalen v. Roe, supra,* on that right, we concluded that the statutory and administrative provisions at issue, in the circumstances of the record before us, violate no right of privacy of patients or physicians. Our conclusion in that regard also applies to the patients' and physicians' challenge on Fourth Amendment grounds. The Fourth Amendment protects only against *unreasonable* searches. Whatever privacy interest the patients and physicians possess in these prescription records is limited to the right not to have the information disclosed to the general public. Disclosures to police officers, or to officials of the State Pharmacy Board, do not violate that right. Because the patients and physicians have no reasonable expectation of privacy in prescription records, as raised in the circumstances of this case (see *Whalen, supra* ), their Fourth Amendment challenge cannot succeed.

### Conclusion

We find that the statutory and administrative scheme found in R.C. 3719.13 and 3719.27 and Ohio Adm.Code 4729–5–17 does not violate a right of privacy contained in the United States and Ohio Constitutions. We also find that the challenged scheme does not violate the prohibition against unreasonable searches and seizures found in the United States and Ohio Constitutions. The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J. and DOUGLAS J., concur.

WRIGHT, J., concurs in the syllabus and judgment.

SWEENEY, CHRISTLEY and H. BROWN, JJ., dissent.

JUDITH A. CHRISTLEY, J., of the Eleventh Appellate District, sitting for HOLMES, J.

CHRISTLEY, J., dissenting. I respectfully dissent from the majority opinion as it relates to the appellant patients' right of privacy and their protections

against unreasonable searches and seizures, found in the United States and the Ohio Constitutions.

As to the right of privacy issue, I believe that the majority's reliance on *Whalen v. Roe* (1977), 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64, is misplaced. In comparison with the case before us, the statutory scheme in *Whalen* contained significantly greater restrictions on the government's right of access to pharmaceutical records, which in turn provided a far greater protection of the individual patient's privacy interest.

I would note that in *Whalen,* those authorized to make the administrative search *did not include police officers;* rather, only the employees of the regulatory agency, the state health department, were so authorized. In the instant case, the majority believes that Ohio Adm.Code 4729–5–17(G)(4) and (H) would minimize the potential for unauthorized disclosure. Those Ohio Administrative Code sections indicate that in addition to regulatory personnel, *police officers* " * * * engaged in a specific investigation involving a designated person or drug * * * " may gain access to the prescription records.

Even as applied, however, these regulations are not sufficient to prevent the fishing expedition that the police are now conducting in the local program at issue. The rather clear requirement of these administrative regulations is that there must be some *specific, ongoing* investigation already in place, targeting either a designated person or drug. As applied, however, these regulations are being interpreted to mean that all prescriptions can be scrutinized in order to monitor various Schedule II and IV drugs without any showing of probable cause, and those prescriptions can then become the subject of an ongoing police investigation, apparently forever.

Much emphasis has also been placed on the fact that the local program (not the state statutes) was designed to collect data only on certain Schedule II and IV drugs which are considered to have an especially high potential for abuse. If that restriction were, in fact, included in the statutes, I would be less alarmed; however, that restriction is contained only in the six-community program which is currently conducting the on-site monitoring. That means that there is absolutely no prohibition to prevent that local program from being either expanded or ignored.

I am not saying that there cannot be any regulatory scheme to monitor prescriptions solely on the basis of a patient's right of privacy; however, I feel that any such scheme has to be replete with restrictions on the involved governmental agencies which will ensure and protect the privacy of the patients involved in any such monitoring to the greatest extent possible. Further, the initial scrutiny should not involve the police. That is certainly not the case in the present statutory scheme.

Thus, I do not find *Whalen* dispositive of the privacy issue raised by appellants and would find that the regulatory scheme as written and applied falls far short of providing adequate constitutional protections to patients on this issue.

As to the next issue, the Fourth Amendment challenge, again I limit my dissent to its application to the patient.

The majority relies on *State v. VFW Post 3562* (1988), 37 Ohio St.3d 310, 525 N.E.2d 773, for the proposition that the court has approved the general validity of administrative searches in a proper situation. I do not quarrel with that general statement; however, a careful analysis of that case necessitates some further observations.

First, the administrative regulatory scheme in *VFW Post* did *not* empower *police officers* to conduct the searches.

Second, *VFW Post* addressed only the Fourth Amendment prohibition against unconstitutional searches and never addressed the privacy issue.

Third, the regulatory scheme in *VFW Post* failed constitutional muster because it did not provide sufficiently limited restrictions as to the time, place and *scope* of the search. " 'The determinative factors to be considered are whether the industry affected is so closely regulated as to provide notice of the prospect of governmental intrusion and whether the statutory scheme enacted "provides *an adequate substitute for a warrant* in terms of the certainty and regularity of its application." * * *.' " (Emphasis added.) *VFW Post 3562, supra,* at 313, 525 N.E.2d at 776, citing *Bionic Auto Parts & Sales, Inc. v. Fahner* (C.A.7, 1983), 721 F.2d 1072, 1078.

" ' * * * To satisfy the "certainty and regularity" requirement, the inspection program must define clearly what is to be searched, who can be searched, and the frequency of such searches * * *.' " *Id.*

The *VFW Post 3562* case goes on to explain that " ' * * * [i]n light of the safeguards placed on the inspection, an administrative warrant requirement would add only marginally if at all to the licensee's right of privacy. [*United States v.*] *Biswell* [ (1972) ], *supra,* 406 U.S. [311] at 316 [92 S.Ct. 1593, at 1596, 32 L.Ed.2d 87, at 92]; *Camara* [*v. Municipal Court* (1967) ], *supra,* 387 U.S. [523] at 539 [87 S.Ct. 1727, 1736, 18 L.Ed.2d 930, 941].' *Bionic Auto Parts & Sales, Inc. v. Fahner, supra,* at 1080." *VFW Post 3562, supra,* 37 Ohio St.3d at 314, 525 N.E.2d at 777.

In other words, to pass constitutional muster, the regulatory scheme must require the same kind of information from the regulatory agency that would be required if a search warrant had been sought by the police. *VFW Post 3562, supra.*

That is not the case in the instant regulatory scheme. I believe this distinction to be critical to the constitutional failure of the statutes. Unlike the requirements that would have to be satisfied if a warrant were sought, the instant regulations do not require the police to demonstrate a focus on a specified and definitive goal or objective. The grant of authority given to police officials in this scheme is totally open-ended, and permits what could only be described as a fishing expedition. Thus, I would find the scheme at issue to be unconstitutional insofar as it allows initial police involvement and because it falls short of requiring search warrant safeguards. This results in the impermissible consequence of allowing open-ended data sweeps of pharmaceutical records which are not limited as to time, place and scope.

I have one last comment as to the inapplicability of *VFW Post 3562:* there, the regulatory scheme pertained only to liquor license holders. The privacy expectations and protections which were violated were only those of the permit holders; no third-party privacy expectation or protection was involved. If this court found the regulatory scheme to be lacking in *VFW Post 3562*, how can it now find the instant statutes to be constitutionally adequate in light of their additional effect on nonregulated third parties, *i.e.*, the patients? The patients' interest in those prescription records, while not absolutely privileged, certainly creates a strong expectation of patient privacy. No such additional conflict of interest was present in the *VFW Post 3562* regulatory scheme, but it was found, nevertheless, to be unconstitutional.

I note too that the majority indicates that no search for general criminality is at issue under the circumstances of the case before us. I disagree. Under the particular program in effect in the six communities, the implication is that *all* prescriptions are being scrutinized in an attempt to detect the abuse of Schedule II and IV drugs. Thus, I submit that a search for general criminality can be inferred.

In conclusion, I would emphasize that I do not find any constitutional prohibition *per se* against a tightly worded regulatory scheme which would authorize a warrantless search by non-police agents under the administrative search exception. However, I find that the statutes and regulations before us do not provide a reasonable protection for either the patients' right of privacy or the right against unreasonable searches and seizures of patients' prescriptions. The fact that the program in place in the six communities attempts to provide some safeguards does not address the inherent lack thereof in the statutes and regulations themselves.

Thus, I would find that, as written and as applied, R.C. 3719.13 and 3719.27 and Ohio Adm.Code 4729-5-17 violate the right of privacy of the patients as

well as their right to be protected against unreasonable searches and seizures under the federal and Ohio Constitutions.

SWEENEY and H. BROWN, JJ., concur in the foregoing dissenting opinion.