Leo THACKER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2001–CA–001321–MR.

Court of Appeals of Kentucky.

June 21, 2002.

---

Alicia A. Sneed, Lexington, KY, for appellant.

Albert B. Chandler III, Attorney General, David A. Sexton, Assistant Attorney General, Frankfort, KY, for appellee.

Before BUCKINGHAM, KNOPF and SCHRODER, Judges.

## OPINION

KNOPF, Judge.

On May 4, 2001, Leo Thacker pled guilty in Fayette Circuit Court to several counts of obtaining, and several counts of attempting to obtain a controlled substance by means of fraud, in violation of KRS 218A.140. By judgment entered May 29, 2001, Thacker was sentenced to five years' probation in lieu of a five-year prison sentence as a second-degree persistent felony offender.[1] Pursuant to RCr 8.09, he reserved his right to appeal from that judgment and now contends that the trial court erred when it denied his motion to suppress evidence. Thacker claims that the evidence was tainted by an enforcement officer's misuse of an electronic prescription-monitoring system. The system is maintained by the Cabinet for Health Services and the so-called KASPER or Kentucky all schedules prescription electronic reporting system. Convinced that the officer's use of the KASPER system violated neither KRS 218A.202, the defining statute, nor constitutional provisions against unreasonable searches and seizures, we affirm.

A Lexington–Fayette County police officer arrested Thacker on April 27, 2000, for driving under the influence. In the course of the arrest, the officer found in Thacker's possession prescription drug containers for four different controlled medications and a bottle of codeine-containing cough medicine. She also learned that Thacker had recently been charged in another county with offenses related to prescription forgery. The officer reported this information to a detective in the narcotics unit of the Lexington Metro Police Department. The detective, in turn, filed a request with the Drug Enforcement and Professional Practices branch of the Department for Public Health,[2] for a KASPER report on Thacker. The KASPER report, which is based on data supplied by dispensers of controlled substances (primarily pharmacists), is in essence a history of the subject's prescription activity within Kentucky since January 1999, when the prescription monitoring system became operational.[3] The report indicated that Thacker had obtained what appeared to be overlapping prescriptions; that is, simultaneous or nearly simultaneous prescriptions from different doctors for similar medications. The detective contacted the reported pharmacies to verify that Thacker had indeed received the controlled medications, and then contacted the reported doctors to inquire if Thacker had made them aware of

---

1. KRS 532.080.

2. The Department is the agency within the Cabinet for Health Services, which among other duties, oversees controlled substances.

3. KRS 218A.202, effective as of July 15, 1998, provides in subsection (1) that

   [t]he Cabinet for Health Services shall establish an electronic system for monitoring Schedules II, III, IV, and V controlled substances that are dispensed within the Commonwealth by a practitioner or pharmacist or dispensed to an address within the Com-

   monwealth by a pharmacy licensed by the Kentucky Board of Pharmacy.

   According to its manager, who testified at Thacker's suppression hearing, the monitoring system consists of an electronic repository of records for each controlled substance dispensed in Kentucky. The records include the names of the prescriber, the dispenser, and the patient; the type and amount of medication; and the date of dispensing. The repository is intended to give both doctors and law enforcement officers efficient access to a patient's or suspect's medication history.

the other prescriptions. All of the doctors informed him that Thacker had not made them aware of his other prescriptions, and each stated that if they had been made aware they would not have given Thacker an additional prescription. The doctors' statements were the basis of the detective's testimony before the grand jury, which indicted Thacker on January 17, 2001.

█ Thacker contends that the detective's use of KASPER-derived information in his communication with the doctors and in his testimony before the grand jury violated the confidentiality provisions of KRS 218A.202, and that his examination of the KASPER data amounted to an unreasonable search and seizure under both the federal and Kentucky constitutions. For the following reasons, we reject both of these contentions.

Subsection (6) of KRS 218A.202 authorizes the Cabinet to release data from the monitoring system to, among a very few others,

(b) A state, federal, or municipal officer whose duty is to enforce the laws of this state or the United States relating to drugs and who is engaged in a bona fide specific investigation involving a designated person; ...

(d) A properly convened grand jury pursuant to a subpoena properly issued for the record; ... [and]

(e) A practitioner or pharmacist who requests information and certifies that the requested information is for the purpose of providing medical or pharmaceutical treatment to a bona fide current patient. Subsection (6) further provides that

[f] person who receives data or any report of the system from the cabinet shall not provide it to any other person or entity except by order of a court of competent jurisdiction.

Thacker contends that government access to the monitoring data for the purpose of law enforcement is subject to the guarantees against unreasonable searches and seizures contained in the federal Fourth Amendment and Section 10 of our state constitution. Release of the data to an officer without a search warrant, therefore, is presumptively unreasonable and unconstitutional, according to Thacker, unless some exception to the warrant requirement applies.[4] Thacker seems to argue that even if KRS 218A.202(6)(b) provides an exception to the warrant requirement, nevertheless, the requesting officer should be required to demonstrate that he has probable cause to believe that the data will reveal evidence of a crime. In this case, he insists, not only did the Cabinet not demand a showing of probable cause before releasing the KASPER report to the officer, but probable cause was lacking.

We are inclined to agree with Thacker that in general the constitutional provisions against unreasonable searches and seizures apply to the state's use of an individual's medical data in its efforts to enforce the criminal laws against him or her. The Fourth Amendment and Section 10 apply whenever law enforcement officers invade a citizen's reasonable expectation of privacy.[5] Medical records, we believe, are within this protected area.[6]

**4.** *Farmer v. Commonwealth*, Ky., 6 S.W.3d 144 (1999).

**5.** *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *LaFollette v. Commonwealth*, Ky., 915 S.W.2d 747 (1996).

**6.** *Denius v. Dunlap*, 209 F.3d 944 (7th Cir. 2000). *Yeoman v. Commonwealth Health Policy Board*, Ky., 983 S.W.2d 459 (1998).

Whether pharmacy records are entitled to the same protection is not as clear. Pharmacy records have long been subject to police inspection, so the expectation of privacy in them is lessened.[7] We need not decide this issue, however, for even if pharmacy and other controlled substance records in possession of the state are entitled to Fourth–Amendment and Section 10 protection, the Supreme Court has recognized an exception to the warrant and probable cause requirements that is pertinent to them. The exception is for administrative searches in furtherance of the State's regulation of industries that pose large risks to the public's health, safety, or welfare.[8] This exception has also been recognized in Kentucky.[9] Under this exception, administrative searches undertaken on less than probable cause—even searches in furtherance of the criminal laws—may nevertheless be reasonable if (1) the state has a substantial interest in regulating the particular industry, (2) the regulation providing for the search reasonably serves to advance that interest, and (3) the regulation informs participants in the industry that searches will be made

and places appropriate restraints upon the discretion of the inspecting officers.[10]

Kentucky clearly has a substantial interest in regulating the sale and distribution of drugs and in attempting to trace their movement through the channels of commerce.[11] It is no less clear that the prescription monitoring system, with its substantial safeguards against inappropriate disclosure of data, reasonably advances that interest. The detective testified that, by eliminating the need to inquire about a suspect at virtually every pharmacy in the county, the KASPER reports have significantly streamlined his prescription-fraud investigations. Finally, the statute makes clear to practitioners and patients that the data is subject to limited police inspection, and the requirement that officers articulate to the Cabinet bona fide suspicions that the individual about whom they are inquiring has violated a provision of KRS Chapter 218A appropriately restrains their discretion.

We agree with the trial court, furthermore, that the individualized-suspicion requirement, whatever its exact relation to probable cause, was more than satisfied in

7. KRS 218A.230, formerly KRS 218.140 and 218.160.

8. *New York v. Burger,* 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987).

9. *Hughett v. Housing & Urban Development Commission,* Ky.App., 855 S.W.2d 340 (1993). Thacker notes that in *Commonwealth v. Wasson,* Ky., 842 S.W.2d 487 (1992), our Supreme Court recognized a somewhat broader right to privacy under the due process provisions of Kentucky's Constitution than the United States Supreme Court has recognized under the Fourteenth Amendment. Similarly, he contends, we should extend the protection afforded by Section 10 of our constitution beyond that of the federal Fourth Amendment. Our Supreme Court, however, has consistently held that Section 10's guarantee against unreasonable searches does not exceed the federal one. *Colbert v. Commonwealth,* Ky., 43 S.W.3d 777 (2001). We leave

any departure from that rule to our Supreme Court. To the extent that Thacker challenges the constitutionality of KRS 218A.202 itself (as opposed to the particular search in this case) as violative of the right to privacy recognized in *Wasson,* his argument was not properly raised or preserved in the trial court and thus is not subject to review. *Brashars v. Commonwealth,* Ky., 25 S.W.3d 58 (2000).

10. *Burger,* 482 U.S. at 702–03, 107 S.Ct. 2636; *see also Morgan v. New Hampshire Board of Pharmacy,* 144 N.H. 44, 742 A.2d 101 (1999).

11. *Cf. Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *Vermont v. Welch,* 160 Vt. 70, 624 A.2d 1105 (1992); *Stone v. City of Stow,* 64 Ohio St.3d 156, 593 N.E.2d 294 (1992).

this case. Thacker, likely a recent prescription forger, was caught intoxicated and in possession of a large number of containers for prescription pain relievers that are often abused. This was sufficient evidence to justify the search of Thacker's KASPER report.

■ Even if the search was valid, Thacker next contends, the detective's use of the KASPER data to direct his investigation amounted to a disclosure of that data in violation of KRS 218A.202(6)(f), the provision that a recipient of KASPER data not disclose it without a court order. We do not agree, however, that the detective's use of Thacker's data amounted to a disclosure. The detective testified that he showed the report to no one, including the grand jury, nor did he tell anyone what the report contained. His asking the doctors who prescribed the overlapping medications whether Thacker told them of other prescriptions and whether they would have prescribed differently if he had told them disclosed nothing to the doctors.

Generally, of course, a question is not a statement. The basis for the detective's questions need not have been and was not disclosed. On the contrary, the disclosures occurred in the opposite direction: the doctors gave information to the detective. It was that information, not the KASPER data, that the detective then presented to the grand jury. The detective's use of Thacker's KASPER report to elicit that information efficiently did not violate KRS 218A.202(6).

For these reasons, we affirm the May 29, 2001, judgment of the Fayette Circuit Court.

ALL CONCUR.