[Cite as *State v. Myers*, 2015-Ohio-160.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NOS. CA2014-02-002 |
| Plaintiff-Appellant/Cross-Appellee, | : | CA2014-02-004 |
| | : | O P I N I O N |
| - vs - | | 1/20/2015 |
| | : | |
| MELISSA C. MYERS, | : | |
| Defendant-Appellee/Cross-Appellant. | : | |


CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRI 2013-5163


Michael DeWine, Ohio Attorney General, Christopher L. Kinsler, 30 East Broad Street, Columbus, Ohio 4315 and Richard W. Moyer, Clinton County Prosecuting Attorney, Wilmington, Ohio 45177, for appellant/cross-appellee

John D. Smith Co., LPA, John D. Smith, Andrew P. Meier, 140 North Main Street, Suite B, Springboro, Ohio 45066, for appellee/cross-appellant


**HENDRICKSON, P.J.**

{¶ 1} Plaintiff-appellant/cross-appellee, the state of Ohio, appeals a decision of the Clinton County Court of Common Pleas granting a motion to suppress filed by defendant-appellee/cross-appellant, Melissa C. Myers. Myers cross-appeals a decision of the Clinton County Court of Common Pleas denying her motion to dismiss the indictment. For the reasons stated below, we reverse in part and affirm in part the decision of the trial court.

{¶ 2}  On April 4, 2013, Detective Dennis M. Luken of the Greater Warren County Drug Task Force received a complaint from the Police Chief of the Wilmington Police Department to investigate Myers.  Myers was employed as a Wilmington police officer at the time.  The request stemmed from Myers' statement to one of her supervisors at the Wilmington Police Department that a physician accused Myers of "doctor-shopping" and refused to treat her.  Based solely on this information, Detective Luken opened an investigation into Myers for prescription drug abuse.

{¶ 3}  As part of Detective Luken's investigation into Myers, he ran a query with the Ohio Automated Rx Reporting System (OARRS).  OARRS is an electronic database maintained by the Ohio State Board of Pharmacy that stores information for prescription drugs that are Schedule II through Schedule V controlled substances and other dangerous drugs.[1]  Among the information stored on the database for each prescription is patient identification, prescriber and pharmacy information, and the name, dosage, and strength of the drug dispensed.  Detective Luken received an OARRS report which contained Myers' prescription information, including the names of prescribing physicians, the pharmacies that filled those prescriptions, and the specifics as to what type of drug she was prescribed.  Detective Luken did not obtain a warrant or Myers' consent prior to running the query on OARRS.

{¶ 4}  Under the subscriber rules of OARRS, Detective Luken is not permitted to give the OARRS report directly to Myers' physicians or pharmacies.  Therefore, Detective Luken transferred the information contained on the OARRS report to a spreadsheet and then sent the spreadsheet to the listed pharmacies to confirm the information was accurate.  Detective Luken also sent Myers' physicians the spreadsheet and asked for a written statement from

---

1.  Schedule I, II, III, IV, and V drugs are listed in R.C. 3719.41.

each of the physicians. Several of Myers' physicians reviewed the OARRS spreadsheet and indicated that had they known she was receiving controlled substances from other physicians they would not have prescribed medications to her.

{¶ 5} On June 6, 2013, Myers was indicted on seven counts of deception to obtain a dangerous drug in violation of R.C. 2925.22(A). On October 25, 2013, Myers filed a motion to dismiss the indictment, a motion to inspect grand jury testimony, a motion to suppress, and a motion in limine. The trial court granted Myers' request for an in camera inspection of the grand jury testimony, without objection from the state. Subsequently, the state filed a motion indicating the grand jury transcript could not be transcribed because the proceedings were not recorded.

{¶ 6} On January 30, 2014, the trial court granted Myers' motion to suppress. The court found that Myers had a reasonable expectation of privacy in her prescription drug information stored on OARRS. Therefore, the Fourth Amendment required Detective Luken obtain a search warrant before accessing Myers' prescription drug information on OARRS. The trial court suppressed all evidence "gleaned by Detective Luken in accessing OARRS without a warrant in furtherance of his targeted, criminal investigation of [Myers]" and all evidence "flowing from that constitutional violation." However, the trial court denied Myers' motion to dismiss the indictment. The court reasoned that the indictment should not be dismissed on the basis of the failure to record the grand jury testimony because Myers had not demonstrated a "particularized need" to view the grand jury transcripts.

{¶ 7} The state now appeals, asserting a sole assignment of error. Myers cross-appeals, also asserting an assignment of error.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION TO SUPPRESS.

{¶ 10} The state argues that Detective Luken's warrantless search of Myers' prescription records did not implicate the Fourth Amendment's prohibition of unreasonable searches and seizures because Myers did not have a reasonable expectation of privacy in her prescription records stored on OARRS. The state also maintains that even if Myers did have a reasonable expectation of privacy in her records, the administrative and good faith exceptions to the warrant requirement apply.

## Standard of Review

{¶ 11} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

## Ohio Automated Rx Reporting System

{¶ 12} In 2005, the Ohio General Assembly enacted R.C. 4729.75, authorizing the Ohio State Board of Pharmacy to maintain a database of prescription records to "monitor the misuse and diversion of controlled substances * * * and other dangerous drugs * * *." R.C. 4729.75. The Board of Pharmacy responded to this grant of authority by creating OARRS. OARRS stores information for prescription drugs that are Schedule II through Schedule V controlled substances and dangerous drugs containing tramadol. Ohio Adm.Code 4729-37-02. Pharmacies and other distributors of controlled substances are required to submit

- 4 -

prescription information for inclusion on OARRS, including: patient and prescriber identification; date the prescription was issued; date the drug was dispensed; name, strength, and national code of the drug; quantity of the drug; and number of days' supply of the drug dispensed. R.C. 4729.77, 4729.78, and 4729.79. Any information on OARRS that identifies a patient will be kept for a period of two years. R.C. 4729.82.

{¶ 13} Disclosure of the information stored in OARRS is governed under R.C. 4729.80. R.C. 4729.80(A) specifies different classes of requests and the requirements to obtain the prescription information under each request. A law enforcement official, whose duties include enforcement of drug-related laws, may obtain an individual's prescription information stored on OARRS if the request relates to a person who is the subject of an active drug abuse investigation being conducted by the requesting officer's employer. R.C. 4729.80(A)(2). To obtain this information, the law enforcement officer must submit a request form which includes an active case number and approval by a supervisor. Ohio Adm.Code 4729-37-08(B). Once received by law enforcement, the officer may not disseminate the information received from OARRS, except as provided by R.C. 4729.86. *See* Ohio Adm.Code 4729-5-29. The information contained in OARRS is not a public record. R.C. 4729.80(C). Misuse of access to OARRS can be punishable by a felony. R.C. 4729.99(J).

### Reasonable Expectation of Privacy

{¶ 14} The Fourth Amendment to the United States Constitution protects individuals from unreasonable governmental searches and seizures. *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675 (1985). In order to employ Fourth Amendment protections, a defendant must have a "constitutionally protected reasonable expectation of privacy." *Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507 (1967). The United States Supreme Court has directed reviewing courts to consider a two-part test in order to determine whether the Fourth Amendment is implicated. "First, has the individual manifested a subjective expectation of

privacy in the object of the challenged search?  Second, is society willing to recognize that expectation as reasonable?"  *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809 (1986), citing *Katz* at 360.

{¶ 15} Both the United States Supreme Court and the Ohio Supreme Court have addressed the extent of constitutionality protected privacy interests in an individual's prescription records.  *Whalen v. Roe*, 429 U.S. 589, 604, 97 S.Ct. 869 (1977); and *Stone v. Stow*, 64 Ohio St.3d 156 (1992).  In *Whalen*, the United States Supreme Court found that a New York statutory scheme that compiled prescription information did not invade "any right or liberty protected by the Fourteenth Amendment."  *Whalen* at 603-604.  Under the statute, patients who received prescriptions for highly addictive drugs and the prescribing physicians were identified, patient and the prescription information was forwarded to the state department of health, and this information was assembled in a database where certain state employees responsible for drug enforcement had access to the information.  *Id.* at 593-595.

{¶ 16} The United States Supreme Court held that the disclosure did not violate an individual's privacy interest in confidentiality of personal matters because the disclosures were not "meaningfully distinguishable from a host of other unpleasant invasions of privacy that are associated with many facets of health care."  *Id.* at 602.  Security measures were implemented to protect the data from disclosure, public disclosures were expressly prohibited, and a willful violation of the nondisclosure provisions was a crime.  *Id.* at 594-595.  Further, the United States Supreme Court held that the statute did not violate the privacy interest of "autonomy in making personal decisions" because while "some individuals' concern for their own privacy may lead them to avoid or postpone needed medical attention * * * requiring such disclosures * * * does not automatically amount to an impermissible invasion of privacy."  *Id.* at 602.

{¶ 17} After *Whalen*, the Ohio Supreme Court addressed a constitutional challenge

- 6 -

made by a group of doctors, patients, and pharmacists regarding a statutory scheme where prescription information was collected by police officers and State Board of Pharmacy employees.[2] *Stone*, 64 Ohio St.3d at 157. In *Stone*, local communities set up a system to collect prescription drug data where the data was collected onto computer floppy disks, the disks transferred the information to a central records system at a police station, and a master file was created and kept for 90 days. *Id.* at 158. The program's objective was to "establish a system of collecting and analyzing data on the diversion of controlled substances from legitimate channels to illicit channels." *Id.* In achieving this objective, law enforcement officials and State Board of Pharmacy employees could inspect the pharmacy prescription records without a warrant. *Id.* at 160.

{¶ 18} The Ohio Supreme Court found that the challenged statutory provisions do not violate a right of privacy under the Fourteenth Amendment of the U.S. Constitution or the similar provisions in the Ohio Constitution. *Id.* at 163. The Court relied on *Whalen* and reasoned that the scheme is constitutionally permissible because public disclosure of the information is prohibited, the Ohio Administrative Code limits police officers' access to records, and the program only collects data on Schedule II and IV drugs which have an especially high potential for abuse. *Id.* at 162-163. Additionally, the Court noted that while it was "somewhat troubled by police initiation of administrative searches" which was not present in *Whalen*, "the fact of police initiation, alone, [does not] require a finding that appellants' privacy rights have been violated." *Id.* at 162.

{¶ 19} The Ohio Supreme Court also addressed whether the statutory and administrative provisions at issue violate the Fourth Amendment of the United States Constitution and Section 14, Article I of the Ohio Constitution. *Id.* at 164. In regards to the

---

2. Specifically, the Ohio Supreme Court addressed the constitutionality of R.C. 3719.13, 3719.27 and Ohio Adm.Code 4729-5-17. *Stone*, 64 Ohio St.3d at 159.

Fourth Amendment rights asserted by the physicians and patients, the Court stated:

> In our discussion of the right of privacy and the implications of *Whalen v. Roe, supra,* on that right, we concluded that the statutory and administrative provisions at issue, in the circumstances of the record before us, violate no right of privacy of patients or physicians. *Our conclusion in that regard also applies to the patients' and physicians' challenge on Fourth Amendment grounds.* The Fourth Amendment protects only against *unreasonable* searches. Whatever privacy interest the patients and physicians possess in these prescription records is limited to the right not to have the information disclosed to the general public. *Disclosures to police officers, or to officials of the State Pharmacy Board, do not violate that right.* Because the patients and physicians have no reasonable expectation of privacy in prescription records, as raised in the circumstances of this case (see *Whalen, supra*), their Fourth Amendment challenge cannot succeed.

(Emphasis added.) *Id.* at 166.

{¶ 20} Based on the guidance from the United States Supreme Court in *Whalen* and the Ohio Supreme Court in *Stone*, Myers did not have a reasonable expectation of privacy that her prescription records stored on OARRS would not be disclosed to Detective Luken in his request of Myers' prescription drug information. Initially, we note that the evidence established that Detective Luken complied with the statutory and regulatory requirements in accessing Myers' prescription records stored on OARRS. At the suppression hearing, Detective Luken demonstrated compliance with R.C. 4729.80(A)(2) by testifying that his duties include enforcement of drug-related laws and that Myers was the subject of an active drug abuse investigation being conducted by the Greater Warren County Drug Task Force. Additionally, Detective Luken established he abided by Ohio Adm.Code 4729-37-08(B). Detective Luken testified that prior to running a query on OARRS, he submitted a Prescription Profile Request form where he attested to an open investigation into Myers, a case number, and his supervisor's approval of the query.

{¶ 21} The statutory schemes in *Whalen* and *Stone* are similar to the case at bar. Like

*Whalen* and *Stone*, the prescription information of patients is stored on OARRS, including the name, date, and dosage of medication and prescriber and patient identification. Further, similar to *Stone*, prescription drug information is collected to monitor the misuse and diversion of controlled substances and other dangerous drugs. Additionally, as in *Stone* and *Whalen*, access to the prescription information stored on OARRS is limited. Only specified individuals may obtain the data, including law enforcement officers who are engaged in a specific investigation involving an individual or drug. Further, public disclosure of the information is prohibited. In fact, both the statutory schemes in the present case and in *Stone* make improper disclosure of prescription information a crime.

{¶ 22} In its decision granting Myers' motion to suppress, the trial court carefully explained OARRS, the relevant statutes governing the database, the facts underlying this case, and Myers' asserted privacy interest in her prescription records. While the trial court's decision was thorough and well-reasoned, the court mischaracterized the Ohio Supreme Court's holding in *Stone.* The trial court found *Stone* distinguishable as that decision was limited to whether the administrative exception to the warrant requirement applies in law enforcement's access to prescription records. The trial court reasoned that *Stone* does not govern the present case because the state has not argued Detective Luken could access the records stored on OARRS under the administrative exception. However, the discussion in *Stone* concerning the administrative search exception to the warrant requirement was within the context of *pharmacists'* reasonable expectation of privacy. *Stone* expressly stated that *doctors and patients* do *not* have a reasonable expectation of privacy that their prescriptions records will not be disclosed to law enforcement under the statutory scheme. In regards to the claims of patients and doctors, *Stone* never addressed the administrative exception.

Therefore, *Stone* is directly applicable to the case sub judice.[3]

{¶ 23} Furthermore, we disagree with the trial court's reasoning that Myers had a reasonable expectation of privacy in her prescription records because the records were covered by physician-patient privilege. The physician-patient privilege is a statutory privilege and not a constitutional privacy right. *State v. Desper*, 151 Ohio App.3d 208, 2002-Ohio-7176, ¶ 32 (7th Dist.). The Ohio Supreme Court has stated: "[E]rror involving [physician-patient] privilege is not a constitutional violation. In the first place, the privilege is not a requirement of due process." *State v. Webb*, 70 Ohio St.3d 325, 334 (1994). Therefore, a motion to suppress would not be an appropriate remedy even if Myers' physician-patient privilege was compromised because the violation would be statutory in nature, not constitutional. *See State v. Otterman*, 9th Dist. Summit No. 21005, 2002-Ohio-5772, ¶ 19.

{¶ 24} Myers argues *Stone* is distinguishable because in *Stone* the plaintiffs' prescription drug information was subject to a mass collection by law enforcement. Unlike *Stone*, Myers' prescription drug information was obtained as a result of a targeted criminal investigation. We are unpersuaded that the fact none of the plaintiffs in *Stone* were subject to a targeted criminal investigation renders *Stone* distinguishable. The inquiry of whether an individual has a reasonable expectation of privacy under the Fourth Amendment does not turn on the purposes for which the information will be used. Rather, the proper inquiry is whether the party has a subjective expectation of privacy in the object of the search that society is prepared to recognize as reasonable. *See Katz*, 389 U.S. at 361.

{¶ 25} Additionally in *Stone,* the statutory scheme permitted the exact type of targeted investigation that occurred in this case. In *Stone*, the program resulted in several convictions

---

3. As set forth below, because Myers did not have a reasonable expectation of privacy in her information contained within the OARRS database, it is irrelevant whether the administrative search exception to the Fourth Amendment warrant requirement applies.

and the purpose of the statutory scheme was to collect data on the diversion of controlled substances from legitimate channels to illicit channels. Furthermore, the targeted investigation of Myers does not change that the purpose of monitoring the misuse and diversion of prescription drugs is promoted by law enforcement obtaining the prescription information of a specific individual. *See New York v. Burger*, 482 U.S. 691, 712-713, 107 S.Ct. 2636 (1987) ("a state can address a major social problem *both* by way of an administrative scheme *and* through penal sanctions. * * * an administrative scheme may have the same ultimate purpose as penal laws, even if its regulatory goals are narrower"). Further, law enforcement's access to prescription information without a warrant in limited situations prescribed by the statute does not give rise to the invasion of a recognized right of privacy. *See Stone* at 299, citing *Burger* at 717.

{¶ 26} Consequently, Myers did not have a reasonable expectation of privacy that her prescription records stored on OARRS would not be disclosed to Detective Luken in his request of prescription drug information pursuant to R.C. 4279.80(A)(2). Therefore, Detective Luken's search on OARRS of Myers' prescription information did not violate the prohibition against unreasonable searches and seizures found in the United States Constitution and the Ohio Constitution. As Myers' Fourth Amendment rights were not implicated in Detective Luken's search, we do not need to address the administrative and good faith exceptions to the Fourth Amendment's warrant requirement. The trial court erred in granting Myers' motion to suppress.

{¶ 27} The state's sole assignment of error is sustained.

{¶ 28} Cross-Assignment of Error No. 1:

{¶ 29} THE TRIAL COURT ERRED IN FAILING TO DISMISS THE INDICTMENT.

{¶ 30} Myers argues that her motion to dismiss the indictment should have been granted because the grand jury proceedings were not recorded. Myers maintains that a

recording of the grand jury proceedings would reveal that she was indicted based on information protected by the physician-patient privilege and that Detective Luken's grand jury testimony was inconsistent with his suppression hearing testimony. Additionally, Myers asserts that the entire criminal investigative process lacked integrity because Myers did not obtain a warrant to search Myers' prescription drug information.

{¶ 31} Grand jury proceedings are secret, and "an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." *State v. Fulton*, 12th Dist. Clermont No. CA2002-10-085, 2003-Ohio-5432, ¶ 37, citing *State v. Greer*, 66 Ohio St.2d 139 (1981), paragraph two of the syllabus; *see* Crim.R. 6(E). Generally, a particularized need for the disclosure of grand jury testimony "is shown where from a consideration of all the surrounding circumstances it is probable that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony." *Id.* at ¶ 37, quoting *Greer* at paragraph three of the syllabus. The determination of whether the accused has shown the requisite "particularized need" is a matter left to the trial court's discretion. *Id.*

{¶ 32} "Pursuant to Crim.R. 22 grand jury proceedings in felony cases must be recorded." *State v. Goff*, 4th Dist. Lawrence No. 11CA20, 2013-Ohio-42, ¶ 31, quoting *State v. Grewell*, 45 Ohio St.3d 4, 9 (1989). A defendant is entitled to inspect all relevant portion of the grand jury testimony, if she demonstrates a particularized need. *State v. Henness*, 10th Dist. Franklin No. 94APA02-240, 1996 WL 52890, *11 (Feb. 6, 1996); s*ee Greer* at paragraph four of the syllabus. However, the failure to record grand jury proceedings is harmless error if the defendant fails to show a "particularized need for * * * grand jury testimony which outweighs the need to maintain grand jury secrecy." *State v. Lawson*, 64 Ohio St.3d 336, 345 (1992), quoting *Grewell* at 9.

{¶ 33} Myers was indicted by the grand jury for deception to obtain a dangerous drug, in violation of R.C. 2925.22(A). R.C. 2925.22(A) provides that, "[n]o person, by deception, shall procure the administration of, a prescription for, or the dispensing of, a dangerous drug * * *." Deception is defined as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another * * * ." R.C. 2913.01(A).

{¶ 34} In regards to Myers' physician-patient privilege argument, while the Ohio Rules of Evidence do not apply to proceedings before grand juries, the evidence rules do apply in regards to privileges. Evid.R. 101(C)(2). Therefore, information that is privileged is not permitted to come before a grand jury. *State v. Baker*, 137 Ohio App.3d 628, 644 (12th Dist.2000). The physician-patient privilege prevents a physician from testifying concerning communication made to the physician by a patient in that relation or the physician's advice to a patient. R.C. 2317.02(B). The physician-patient privilege attaches to communications made relating to the medical treatment of the patient, but where the communication purports a fraud or other criminal activity, the "relationship" is not established and the privilege does not attach. *State v. Mouser*, 12th Dist. Clinton No. CA2003-05-013, 2004-Ohio-2295, ¶ 11, citing *State v. Spencer*, 126 Ohio App.3d 335, 338-339 (8th Dist.1998). If a defendant lies to a physician about whether another physician was prescribing controlled drug medications for him, that statement would not be considered a communication under the statute. *Desper*, 2002-Ohio-7176 at ¶ 47. *See State v. Jackson*, 8th Dist. Cuyahoga No. 80051, 2002-Ohio-2746, ¶ 32. Therefore, Myers has not shown a particularized need for a recording of the grand jury proceedings based on her physician-patient privilege argument because the communications were fraudulent.

{¶ 35} Implicated in both Myers' physician-patient privilege argument and argument

concerning Detective Luken's alleged inconsistent testimony is that a conviction for deception to obtain a dangerous drug requires the state to prove that Myers affirmatively lied to her physicians instead of merely withholding information. At the suppression hearing, Detective Luken testified that there was no evidence that Myers "affirmatively told a lie to one of [the] health care providers." Myers argues that Detective Luken's grand jury testimony must have been inconsistent with his suppression hearing testimony because Myers' "omission" to her health care providers could not be the basis of the indictment as it does not satisfy the definition of "deception" under the statute.

{¶ 36} However, the definition of deception includes "knowingly deceiving another * * * by *withholding information* * * *." (Emphasis added.) R.C. 2913.01(A). This court has found that a conviction for deception to obtain a dangerous drug was not against the manifest weight of the evidence where the defendant was being treated by multiple physicians who were prescribing pain medication and the defendant failed to inform his doctors about each other and his other prescriptions. *Mouser* at ¶ 23-26; s*ee State v. Zweifel*, 3d Dist. Union No. 14-05-58, 2006-Ohio-4844, ¶ 6, 13 (deception to obtain a dangerous drug conviction affirmed where doctor would not had prescribed drugs if patient fully disclosed other physicians and prescriptions). At the suppression hearing, the state presented statements from several of Myers' physicians that had they known Myers was receiving controlled substances from other physicians they would not have prescribed medications to her. Therefore, to the extent that Myers argues she has a particularized need for the grand jury testimony because the state did not show evidence of an affirmative lie, this argument is without merit.

{¶ 37} Lastly, Myers' argument that there is a lack of integrity in the entire criminal investigation process because Detective Luken searched the OARRS database without a warrant is also without merit. As discussed in the state's assignment of error, Myers did not have a reasonable expectation of privacy in her prescription records. Therefore, Detective

Luken did not need a warrant to access Myers' records on OARRS. Furthermore, Detective Luken complied with the statutory and regulatory requirements in accessing Myers' prescription records stored on OARRS. In light of the forgoing reasons, the trial court did not err in denying Myers' motion to dismiss the indictment. Myers' cross-assignment of error is overruled.

{¶ 38} The judgment of the trial court is reversed in part and affirmed in part. The trial court's decision granting Myers' motion to suppress all evidence obtained by Detective Luken's warrantless search of Myers' prescription information stored on OARRS is reversed. Myers' Fourth Amendment rights were not violated because she did not have a reasonable expectation of privacy that her prescription records would not be disclosed to Detective Luken in his request of prescription drug information pursuant to R.C. 4279.80(A)(2). The trial court's decision denying Myers' motion to dismiss the indictment is affirmed.

S. POWELL and M. POWELL, JJ., concur.