[Cite as *My Friend's Place in Unity v. Dept. of Mental Health & Addiction Servs.*, 2024-Ohio-3257.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| My Friend's Place in Unity et al., | : | |
| Appellants-Appellants, | : | No. 24AP-47 |
| | | (C.P.C. No. 23CV-4267) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Mental Health and Addiction Services, | : | |
| | : | |
| Appellee-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on August 27, 2024

**On brief:** *Richard Parry*, for appellants.

**On brief:** *Dave Yost*, Attorney General, *Bradley Steen*, *Morgan Tendam*, and *Andrew Fraser*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Appellants, My Friend's Place in Unity, My Brother's Place, My Brother's Other Place, and My Best Friend's Place, appeal from a decision and judgment entry of the Franklin County Court of Common Pleas affirming an order of appellee, Ohio Department of Mental Health and Addiction Services ("Department"), revoking the residential facility provider licenses of appellants. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} Appellants are Class II residential facilities licensed by the Department to provide accommodations, supervision, and personal care services to certain individuals, including individuals with mental illness. Appellants are owned and operated by Alan Williams. By four separate notices of opportunity for hearing dated June 13, 2022, the

Department notified appellants that it proposed to take disciplinary action with possible revocation of their licenses to operate Class II residential facilities. The Department alleged that, during a series of surveys conducted in 2021, it discovered appellants failed to comply with the Department's rules relating to providing nutritionally balanced food, maintaining cleanliness in the facilities, and providing assistance with administering, documenting, and storing medications.

{¶ 3} The Department conducted an administrative hearing beginning January 23, 2023. During the hearing, the Department presented extensive testimony and photographic evidence of the conditions of the four residential facilities during surveys of the facilities conducted on various dates in 2021.

{¶ 4} As to My Brother's Place, the Department surveyor testified to finding numerous areas of noncompliance during a June 9, 2021 survey. The Department surveyor did not observe breakfast being served during the morning survey and did not observe sufficient breakfast food in the facility. Additionally, the cabinets and a single unlocked refrigerator were nearly empty and dirty, while the main refrigerator was locked and could not be accessed by residents. Food was stored in a locked basement, and the canned foods and frozen foods on the premises were expired. Further, the surveyor noted the fire extinguishers were expired and a smoke detector inside the facility was beeping. Overall, the surveyor described the facility as dirty with debris on the floors and counters, trash on the floor, gnats in the kitchen, and overflowing trashcans. Residents told the surveyor that staff did not clean the facility. The facility also failed to lock or secure residents' medications, failed to maintain documentation relating to the residents' self-administration of medications, and failed to maintain current medication lists for the three residents with whom the surveyor spoke during the survey.

{¶ 5} As to My Friend's Place in Unity, Department surveyors conducted surveys on June 9 and December 28, 2021. During the various surveys, the Department surveyors observed empty cabinets and a locked refrigerator, improper food storage, expired and spoiled food, and only one resident controlled access to the refrigerator. My Friend's Place in Unity was also dirty, covered in trash, cluttered, and had evidence of mouse and cockroach infestation. The facility did not maintain any records of self-administered

medications, and the surveyor observed one resident unlock the medication cabinet without staff and oversee another resident's self-administration of medication.

{¶ 6} The Department conducted two surveys of My Best Friend's Place on February 24 and June 9, 2021 during which the facility could not produce any records of self-administration of medication, did not maintain the medications in a secured or locked area, and did not show any evidence that facility staff assisted with the self-administration of medication. During the morning survey on June 9, 2021, no staff was present to provide breakfast, the main refrigerator was locked, and the remaining small refrigerators did not contain a sufficient supply of food. The facility was dirty, and the trash can in the bathroom overflowed with trash.

{¶ 7} Lastly, as to My Brother's Other Place, the Department surveyor who conducted a June 2021 survey testified staff did not provide breakfast, the refrigerator contained moldy and spoiled food, and residents prepared their own food. The facility did not contain personal care supplies and residents, not staff, were responsible for cleaning the facility, which was dirty. Additionally, medications were not stored in secured or locked areas, and the facility did not have available medication records.

{¶ 8} Williams, the operator of all four facilities, testified food is prepared off site and brought to the facilities and that residents are to blame for the lack of cleanliness in the facilities. He acknowledged he did not know the rules regarding medications and stated he had difficulty with the record-keeping aspects of the facilities. He also stated it was hard to keep up with managing all four facilities.

{¶ 9} Following the hearing, on May 11, 2023, the hearing examiner issued a report and recommendation with detailed findings of fact, including that the Department had put forth sufficient evidence that appellants were in violation of numerous administrative rules, including Ohio Adm.Codes 5122-30-13, 5122-30-15, 5122-30-21, 5122-30-23, and 5122-30-28. Based on these factual findings, the hearing examiner concluded the allegations in the notice were proven and recommended revocation of appellants' Class II residential facilities licenses. Appellants filed objections to the report and recommendation. Subsequently, on May 30, 2023, the Department issued an adjudication order revoking the provider licenses of all four facilities.

{¶ 10} Appellants filed an appeal from the Department's order to the trial court on June 14, 2023. The trial court granted appellants' motion to stay execution of the Department's order during the pendency of the administrative appeal. In their appeal to the trial court, appellants did not address the factual findings related to specific rule violations. Instead, appellants argued the Department violated their due process rights by conducting illegal searches and seizures without warrants or consent. Additionally, appellants asserted the Department further violated their rights to due process by seeking revocation of their licenses without first providing them plans of correction to remedy alleged rule violations. The Department argued the trial court should affirm its order as the order is in accordance with law and supported by reliable, probative, and substantial evidence. Despite appellants' allegations that the Department's searches of the facilities violated their rights to due process, the Department specifically noted appellants did not challenge the constitutionality of the Department's statutory and administrative scheme of conducting surveys and inspections found in R.C. 5119.34(F) and (J). Throughout the appeal, the Department noted appellants continued to file, without leave of court, extraneous documents, exhibits, and pleadings not part of the administrative record.

{¶ 11} On December 20, 2023, the trial court issued a decision and judgment entry affirming the Department's order. The trial court found appellants could not show the Department's survey inspections of the facilities were illegal searches and seizures or that the Department was required to submit a plan of correction before initiating revocation proceedings. Thus, the trial court determined there was reliable, probative, and substantial evidence to support the Department's order and that the order was in accordance with law. Appellants timely appeal.

## II. Assignments of Error

{¶ 12} Appellants assign the following four assignments of error for our review:

[I.] The trial court erred in granting judgment for Department of Mental Health.

[II.] O.R.C. 5119.34 is unconstitutional on it's face and as applied in this case.

[III.] Appellant was denied due process by the introduction of date 9-19-2022, without adequate notice.

[IV.] Plan of correction statute as applied is ambiguous and failed to show apellant had a long-term pattern of non-compliance.

(Sic passim.)

## III. Standard of Review

{¶ 13} In reviewing an order of an administrative agency under R.C. 119.12, a common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110 (1980). " 'Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true." *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). " 'Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue." *Id.* " 'Substantial' evidence is evidence with some weight; it must have importance and value." *Id.*

{¶ 14} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. On questions of law, the common pleas court conducts a de novo review, exercising its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993), quoting R.C. 119.12.

{¶ 15} An appellate court's review of an administrative decision is more limited. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). As to factual disputes, the appellate court is to determine only whether the common pleas court abused its discretion. *Id.*; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218 (1983). To find an abuse of discretion,

we must conclude the trial court's decision was without a reasonable basis and clearly wrong. *Miracle Home Health Care, L.L.C. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-318, 2012-Ohio-5669, ¶ 18. On purely legal questions, however, an appellate court's review is plenary. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.).

## IV. First Assignment of Error – Warrantless Search and Seizure

{¶ 16} In their first assignment of error, appellants argue the trial court erred in granting judgment in favor of the Department by failing to conclude the Department's warrantless searches and seizures of the residential facilities violated appellants' rights under the Fourth Amendment to the United States Constitution and Article I, Section 14, Ohio Constitution, which protect against unreasonable searches and seizures. Appellants assert the trial court should have found the inspections and searches of the residential facilities were unconstitutional and reversed the Department's revocation order on that basis.

{¶ 17} R.C. 5119.34 governs the inspection and licensing of residential facilities. A person seeking to operate a residential facility must apply for licensure of the facility to the Department. R.C. 5119.34(E). The statute authorizes the director of the Department to adopt rules establishing "[m]inimum standards for the health, safety, adequacy, and cultural competency of treatment of and services for persons in residential facilities." R.C. 5119.34(N)(1). Further, the statute provides the Department may refuse to renew or revoke the license of a residential facility if the Department finds that the facility is not in compliance with the rules adopted by the director. R.C. 5119.34(G)(1)(a).

{¶ 18} The notice provided to appellants contained allegations that appellants were not in compliance with multiple rules, contained in the Ohio Administrative Code, governing Class II residential facilities. Among the alleged rule violations, the notice alleged appellants failed to comply with: (1) Ohio Adm.Code 5122-30-13, requiring facilities to provide three nutritionally balanced meals for each resident daily, to maintain a two-day supply of perishable foods for the number of residents, and to store all food in a manner that protects against contamination and spoilage; (2) Ohio Adm.Code 5122-30-15, requiring facilities to thoroughly and routinely clean all areas of the facility; (3) Ohio

Adm.Code 5122-30-21, requiring facilities to have staff to assist with self-administration of medications; (4) Ohio Adm.Code 5122-20-23, requiring facilities to maintain immediately accessible written information for each resident, including a list of current medications and a record of all medications self-administered by residents; and (5) Ohio Adm.Code 5122-30-28, requiring facilities to maintain all medications in a locked area. The hearing examiner's report and recommendation found appellants were not in compliance with these provisions, listing in detail the evidence supporting those findings.

{¶ 19} On appeal to the common pleas court, appellants did not challenge any of the factual findings related to any of the specific rule violations. Additionally, appellants did not raise a challenge to the constitutionality of R.C. 5119.34 or the related administrative code provisions. Instead, appellants argued, more generally, that the inspections of the residential facilities were constitutionally unreasonable because they were conducted without a warrant and without appellants' consent. The trial court concluded R.C. 5119.34 provides the Department the authority to inspect licensed facilities and specifically allows Department employees to enter residential facilities at any time. Thus, the trial court determined appellants could not show the searches of the residential facilities were constitutionally unreasonable searches and seizures because holders of licenses for residential facilities consent to inspections by the Department by applying for and holding licenses to operate such facilities. We agree.

{¶ 20} Generally, warrantless searches are considered unreasonable and evidence obtained by a warrantless search is subject to exclusion " 'unless the circumstances of the search establish it as constitutionally reasonable.' " *Trish's Café & Catering, Inc. v. Ohio Dept. of Health*, 10th Dist. No. 10AP-539, 2011-Ohio-3304, ¶ 28, quoting *AL Post 763 v. Ohio Liquor Control Comm.*, 82 Ohio St.3d 108, 111 (1998). Notwithstanding the presumption of unreasonableness contained in the Fourth Amendment, courts have recognized certain types of warrantless searches as reasonable. *Id.*, citing *AL Post 763* at 111, citing *Stone v. Stow*, 64 Ohio St.3d 156, 164-65 (1992). The Supreme Court of Ohio explicitly included "administrative search[es]" in the list of recognized warrantless search exceptions. *Id.*, citing *Stone* at 165, fn. 4. "A warrantless administrative search may be conducted if the authorizing statute or regulation does not interfere with a reasonable expectation of privacy protected by the Fourth Amendment." *Id.*, citing *Stone* at 164.

{¶ 21} Appellants maintain that the surveys of the four residential facilities leading to the revocation proceedings constituted unreasonable searches because the surveys interfered with their expectation of privacy. However, the Supreme Court of Ohio has explained that there is only a "minimal" expectation of privacy for permit and license holders who consent to inspection of their premises pursuant to the statutes and administrative rules as part of applying for and maintaining an administrative permit or license. *AL Post 763* at 114 (" 'unannounced, even frequent' inspections are essential to the effective enforcement of those statutes and rules governing highly regulated industries"), quoting *United States v. Biswell*, 406 U.S. 311, 316 (1972). Similar to the statutes, rules, and regulations governing liquor permit holders at issue in *AL Post 763*, R.C. 5119.34 provides that holders of licenses for residential facilities consent to inspections by the Department when they apply for and maintain licenses to operate these facilities.

{¶ 22} Pursuant to R.C. 5119.34(J), the Department has the authority to inspect licensed facilities. The statute provides:

> (1) The department of mental health and addiction services may conduct an inspection of a residential facility as follows:
>
> (a) Prior to issuance of a license for the facility;
>
> (b) Prior to renewal of the license;
>
> (c) To determine whether the facility has completed a plan of correction required pursuant to division (J)(2) of this section and corrected deficiencies to the satisfaction of the department and in compliance with this section and rules adopted pursuant to it;
>
> (d) Upon complaint by any individual or agency;
>
> (e) At any time the director considers an inspection to be necessary in order to determine whether the facility is in compliance with this section and rules adopted pursuant to this section.
>
> (2) In conducting inspections the department may conduct an on-site examination and evaluation of the residential facility and its personnel, activities, and services. The department shall have access to examine and copy all records, accounts, and any other documents relating to the operation of the residential

> facility, including records pertaining to residents, and shall have access to the facility in order to conduct interviews with the operator, staff, and residents.

Additionally, R.C. 5119.34(L)(1) provides Department employees "may enter a residential facility at any time."

**{¶ 23}** Thus, R.C. 5119.34 plainly permits inspections of Class II residential facilities at any time, and license-holders consent to these inspections when they apply for and continue to hold such licenses. Given the consent provided and the statutory framework, appellants do not demonstrate the Department's authority to survey licensed facilities, pursuant to R.C. 5119.34, interferes with any reasonable expectation of privacy. Accordingly, we agree with the trial court that the Department's surveys of the four facilities were not unconstitutional searches and seizures.

**{¶ 24}** On appeal to this court, appellants raise, for the first time, a challenge to the constitutionality of R.C. 5119.34. Appellants assert the portions of R.C. 5119.34 authorizing the Department to enter premises at any time are unconstitutional because those provisions are not an adequate substitute for a warrant as required by *New York v. Burger*, 482 U.S. 691 (1987). In *Burger*, the Supreme Court of the United States set forth a three-part test for determining whether a warrantless administrative search is reasonable. "First, there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made." *Id.* at 702, citing *Donovan v. Dewey*, 452 U.S. 594, 602 (1981). "Second, the warrantless inspections must be 'necessary to further [the] regulatory scheme.' " *Burger* at 702, quoting *Donovan* at 600. Third, " 'the * * * inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.' " *Id.* at 703, quoting *Donovan* at 603.

**{¶ 25}** As noted above, appellants did not raise the constitutionality of R.C. 5119.34 in the trial court. Appellants' failure to challenge the constitutionality of R.C. 5119.34 in the common pleas court forfeits this argument for purpose of appeal. *CHS-Lake Erie, Inc. v. Ohio Dept. of Medicaid*, 10th Dist. No. 18AP-897, 2020-Ohio-505, ¶ 89, citing *Edmands v. State Med. Bd. of Ohio*, 10th Dist. No. 16AP-726, 2017-Ohio-8215, ¶ 14. *Id.*, quoting *Nunn v. Ohio Dept. of Ins.*, 10th Dist. No. 18AP-114, 2018-Ohio-4030, ¶ 11 (" '[i]t is well established that a party may not present new arguments for the first time on appeal' ");

*Atkins v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 08AP-182, 2008-Ohio-4109, ¶ 19 ("[a] fundamental rule of appellate review is that an appellate court will not consider any error that could have been, but was not, brought to the trial court's attention," including constitutional arguments) (internal quotations and citations omitted), citing *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210 (1982). Thus, we need not engage in the *Burger* analysis for the first time on appeal. Instead, having determined the trial court correctly found holders of licenses for residential facilities consent to inspections by the Department by applying for and holding licenses to operate such facilities, we find the trial court did not err in concluding the inspections and surveys of appellants' facilities were authorized by law and constitutionally permissible, and in affirming the Department's order.

{¶ 26} We overrule appellants' first assignment of error.

**V. Second Assignment of Error – Constitutionality of R.C. 5119.34**

{¶ 27} In their second assignment of error, appellants argue the portions of R.C. 5119.34 allowing surveys of Class II residential facilities are unconstitutional on their face and as applied. Through this assignment of error, appellants repeat the arguments they made under their first assignment of error related to the constitutionality of R.C. 5119.34. As we noted in our resolution of appellants' first assignment of error, appellants failed to raise the constitutionality of R.C. 5119.34 at the trial court. Having failed to raise the constitutionality of the statute below, we will not address that argument for the first time on appeal. *CHS-Lake Erie, Inc.* at ¶ 89. Accordingly, we overrule appellants' second assignment of error.

**VI. Third Assignment of Error – Denial of Due Process**

{¶ 28} In their third assignment of error, appellants argue they were deprived of due process when the Department was permitted to introduce evidence, during the administrative hearing, from a September 19, 2022 survey of their facilities because the underlying citations related to surveys conducted in 2021.

{¶ 29} Appellants' argument relates to a portion of testimony from a Department surveyor who identified a photograph of rat poison taken during the June 9, 2021 survey of My Friend's Place in Unity. While identifying the photograph, the surveyor was asked whether she ever saw any rodents in the basement, and she stated she nearly stepped on a

dead mouse during her September 19, 2022 survey of the facility. Appellants neither objected to this testimony during the administrative hearing nor raised any argument before the common pleas court related to evidence from the September 19, 2022 survey. Accordingly, appellants have waived this argument for purposes of appeal. *CHS-Lake Erie, Inc.* at ¶ 89. We, therefore, overrule appellants' third assignment of error.

## VII. Fourth Assignment of Error – Plan of Correction Statute

{¶ 30} In their fourth and final assignment of error, appellants argue the portion of R.C. 5119.34 relating to a plan of correction is ambiguous. R.C. 5119.34(J)(2) provides that, following an inspection and review, the Department "may require the operator to submit a plan of correction describing how the deficiencies will be corrected." Appellants assert the discretionary language in the statute is ambiguous. Again, appellants did not raise this argument in the trial court and have, therefore, waived the argument for purposes of appeal. *CHS-Lake Erie, Inc.* at ¶ 89. Thus, we overrule appellants' fourth and final assignment of error.

## VIII. Disposition

{¶ 31} Based on the foregoing reasons, the trial court did not err in affirming the order of the Department revoking appellants' licenses to operate Class II residential facilities as the order is supported by reliable, probative, and substantial evidence and is in accordance with law. Having overruled appellants' four assignments of error, we affirm the decision and judgment entry of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and EDELSTEIN, JJ., concur.

———————————